**RECORD NO. 13-1300**

In The

# United States Court Of Appeals
# For The Fourth Circuit

## ADESINA A. MERCER,

*Plaintiff - Appellant,*

v.

## THE ARC OF PRINCE GEORGES COUNTY, INC.,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

———————

**BRIEF OF APPELLANT**

———————

**Kevin M. Plessner**
**LAW OFFICE OF KEVIN M. PLESSNER**
**228 Homewood Road**
**Linthicum, MD  21090**
**(443) 354-4775**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1300          Caption: Adesina A. Mercer v. The ARC of Prince George's County, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Adesina A. Mercer
(name of party/amicus)

who is _____ appellant _____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Kevin M. Plessner                    Date:    March 22, 2013

Counsel for: Appellant

## CERTIFICATE OF SERVICE
***************************

I certify that on ___March 22, 2013___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Kevin M. Plessner                         March 22, 2013
(signature)                                   (date)

07/19/2012                    - 2 -
SCC

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................1

STATEMENT OF THE CASE.................................................................2

STATEMENT OF FACTS .......................................................................3

    I.     Ms. Mercer's Job Duties and Performance............................3

    II.    Ms. Mercer is Injured, Hospitalized, Replaced and then Fired ...........5

SUMMARY OF ARGUMENT.................................................................9

ARGUMENT ...........................................................................................11

    STANDARDS OF REVIEW ........................................................11

    DISCUSSION OF THE ISSUES .................................................11

    I.     Rules 12(b)(6) and 56 Require Ms. Mercer's Allegations to Be Accepted as True .....................................................................11

    II.    The District Court Erred When it Dismissed Ms. Mercer's Interference Claim .................................................................13

          A.     The Lower Court Did Not Consider Or Even Mention Any of Ms. Mercer's Evidence...................................13

          B.     There is a Dispute of Fact As to Whether Plaintiff Performed Her Duties Well .......................................14

i

C.  Ms. Mercer was Terminated Under Circumstances Which Indicate that Defendant's Stated Reasons (Performance-Related) for Terminating Her Are Pretextual ............................18

D.  A Jury Can Infer Pretext from Defendant's Shifting Reasons for Plaintiff's Termination ...........................................21

E.  Plaintiff Has Stated a Legally Sufficient Claim of Interference With Her Protected FMLA Rights ......................21

F.  There Are Disputed Issues of Material Fact Regarding Ms. Mercer's Claim of Interference With Her FMLA Rights ...............................................................................25

1.  Defendant's Human Resources Director Makes Unsupported Assertions ...............................................25

2.  Unsupported Allegations of Unopened Mail .................30

3.  Ms. Mercer is Locked Out of Her Office .......................34

G.  The Lower Court Erred in Crediting the Affidavit Testimony of Defendant's Human Resources Employee While Not Resolving Disputed Issues in Favor of Ms. Mercer ...................................................................................37

III.  The District Court Erred When it Dismissed Ms. Mercer's Retaliation Claim.................................................................................38

A.  The Lower Court Erred When it Did Not Consider or Even Mention Any of Ms. Mercer's Evidence in its Opinion.............................................................................38

B.  There is a Material Dispute of Fact As to Whether Defendant Actually Knew that Plaintiff Performed Her Duties Well ........................................................................39

C.  Plaintiff Has Met Her *Prima Facie* Burden ..............................45

D.  The Closeness In Time Between the FMLA Leave and Plaintiff's Termination Establishes a *Prima Facie* Case ..........48

IV.   The District Court Erred In Dismissing Both FMLA Counts In the Complaint Because Ms. Mercer's Allegations Are Plausible ........49

    A.   The Lower Court Erred When It Did Not Accept Plaintiff's Evidence As True and Instead Accepted Statements From Defendant's Witness As True ........................49

    B.   Ms. Mercer Only Needs to Show that Her Claims Are Plausible ...................................................................................52

V.   The District Court Erred When It Dismissed Ms. Mercer's Complaint Before She Had the Opportunity To Conduct Any Discovery ...........................................................................................54

CONCLUSION ........................................................................................55

REQUEST FOR ORAL ARGUMENT .................................................56

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................12, 52

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..............................................................12, 52

*Bonds v. Leavitt*,
 629 F.3d 369 (4th Cir. 2011) .....................................11, 37, 39, 49

*Clark County Sch. Dist. v. Breeden*,
 532 U.S. 268 (2001)...................................................................48

*Cline v. Wal-Mart Stores, Inc.*,
 144 F.3d 294 (4th Cir. 1998)......................................................48

*Coleman v. Md. Court of Appeals*,
 626 F.3d 187 (4th Cir. 2010), *aff'd*,
 132 S. Ct. 1327 (2012)..........................................................12, 52

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
 507 F.3d 270 (4th Cir. 2007)......................................................11

*Cones v. Shalala*,
 199 F.3d 512 (D.C. Cir. 2000) ...................................................49

*Dennis v. Columbia Colleton Medical Center, Inc.*,
 290 F.3d 639 (4th Cir. 2002).....................................................22

*Dyer v. Community Memorial Hospital*,
 2006 WL 435721 (E.D. Mich. 2006)..........................................50

*Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*,
 264 F.3d 424 (4th Cir. 2001)..................................................13, 51

*Edgar v. JAC Products, Inc.*,
    443 F.3d 501 (6th Cir. 2006)............................................................36

*E.E.O.C. v. Sears Roebuck*,
    243 F.3d 846 (4th Cir. 2001).............................................................22

*E.E.O.C. v. Town & Country Toyota, Inc.*,
    7 Fed.Appx. 226, 2001 WL 369675 (4th Cir. 2003) ....................22

*Evans v. Techns. Application & Serv. Co.*,
    80 F.3d 954 (4th Cir. 1996)..............................................................55

*GE Inv. Private Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001)......................................11, 37, 39, 49

*Gerner v. County of Chesterfield*,
    674 F.3d 264 (4th Cir. 2012).....................................11, 37, 39, 49

*Kendall v. Balcerzak*,
    650 F.3d 515 (4th Cir. 2011)............................................................11

*Lanford v. Prince George's County*,
    199 F. Supp. 2D 297 (D. Md. 2002)..............................................28

*Love v. Smith*,
    2005 U.S. Dist. LEXIS 9480 (D. Md. 2005).................................54

*Lust v. Sealy, Inc.*,
    383 F.3d 580 (7th Cir. 2004)...........................................................50

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) ..................45

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009).....................................................12, 53

*Nichols v. Ashland Hosp. Corp.*,
    251 F.3d 496 (4th Cir. 2001)...........................................................45

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)..............................................................................13, 51

*Revene v. Charles County Comm'rs*,
    882 F.2d 870 (4th Cir. 1989).........................................................27

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).......................................................................12, 52

*Skinner v. Switzer*,
    131 S. Ct. 1289 (2011)....................................................................12, 52

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002).......................................................................12, 52

*United Black Firefighters v. Hirst*,
    604 F.2d 844 (4th Cir. 1979).........................................................28

*Walton v. Ford Motor Co.*,
    424 F.3d 481 (6th Cir. 2005).........................................................36

*Williams v. Cerberonics, Inc.*,
    871 F.2d 452 (4th Cir. 1989).........................................................48, 49

*Williams v. Nashville Network*,
    132 F.3d 1123 (6th Cir. 1997).......................................................22

*Yashenko v. Harrah's*,
    446 F.3d 541 (4th Cir. 2006).......................................................13, 45, 48

*Yoon v. Sebelius*,
    2010 U.S. Dist. LEXIS 2555 (D. Md. 2010)....................................55

## STATUTES

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

29 U.S.C. § 2601 .....................................................................................2

29 U.S.C. § 2614 .................................................................................23

29 U.S.C. § 2614(a) .............................................24, 35, 36, 47

29 U.S.C. § 2615(a)(1) .......................................................24, 35

29 U.S.C. § 2615(a)(2) .......................................................46, 47

29 U.S.C. § 2617 ..................................................................................1

**RULES**

Fed. R. Civ. P. 8(a)(2) .......................................................12, 52

Fed. R. Civ. P. 12(b)(6) .........................................................*passim*

Fed. R. Civ. P. 50 ...............................................................13, 51

Fed. R. Civ. P. 56 .................................................................*passim*

Fed. R. Civ. P. 56(c)(4) ......................................................25, 26

Fed. R. Civ. P. 56(d) ...............................................................10

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland ("District Court"), had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, as the claims arose under 29 U.S.C. §§2617.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal. The District Court granted Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment on February 5, 2013, and Ordered the Clerk to close this civil action.  On March 6, 2013, Appellant timely filed a notice of appeal from the final judgment entered below.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This case raises important questions as to what factual determinations a court may appropriately make when presented with a motion to dismiss or for summary judgment before the parties have engaged in discovery.

I.      Whether the the District Court erred when it found disputed material facts in favor of defendant?

II.     Whether the District Court erred when it failed to draw any reasonable inferences in favor of the plaintiff non-movant?

III.    Whether the District Court erred when it determined that Ms. Mercer's Complaint was not plausible?

IV.     Whether the District Court erred when it dismissed Plaintiff's Complaint before any discovery could be taken?

## STATEMENT OF THE CASE

***Nature of the Case.***  Ms. Mercer filed a Complaint under The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§2601 *et. Seq.* ("the FMLA), in the U.S. District Court for the District of Maryland on January 31, 2012. JA 2, 4-11.  Plaintiff's Complaint included two counts: (I) Violation of the FMLA; and (II) Retaliatory Discharge in Violation of a Clear Mandate of State Public Policy. JA 4-11.  Count One, violation of the FMLA, is at issue in this appeal.

***Course of Proceedings.***  The Plaintiff voluntarily dismissed Count two, Retaliatory Discharge in Violation of a Clear Mandate of State Public Policy, as it was duplicative of Count One and based on violation of the federal statute.

Defendant Moved to dismiss or in the alternative for summary judgment on all counts and attached to its supporting memorandum unsubstantiated *ex parte* statements of its Human Resources Director on March 6, 2012. JA 2.

Ms. Mercer timely filed an opposition to Defendant's motion to dismiss or in the alternative for summary judgment and attached to her supporting memorandum, *inter alia*, an affidavit disputing material facts contained in the affidavit of Defendant's Human Resources Director on March 21, 2012. JA 2, 32-34.

Defendant filed a reply to Mercer's opposition to Defendant's motion to dismiss or in the alternative for summary judgment on April 9, 2012. JA 2.

***Disposition Below.***  The District Court issued a memorandum opinion and order granting Defendant's motion to dismiss or in the alternative for summary judgment on February 5, 2013, and ordered the clerk to dismiss Mercer's civil action. JA 3, 41-50.

***Timely Appeal.***  Ms. Mercer filed a timely notice of appeal from the final judgment entered below on March 6, 2013. JA 3, 51-52.

## STATEMENT OF FACTS

### I.    Ms. Mercer's Job Duties and Performance

Plaintiff began her employment at The Arc of Prince Georges County on July 26, 2004. JA 5, ¶6.  She worked as a full time Finance and Benefits Coordinator. JA 5, ¶6.  Her job duties included, *inter alia,* oversight and management of resident finances and benefits, including management of the Food Stamp Program. JA 5-6, ¶6.

During the time she worked for Defendant, Plaintiff's responsibilities increased significantly. JA 6, ¶6.  When Ms. Mercer began in her position as Finance and Benefits Coordinator, she had about 90 residents. JA 33, ¶12.  As time went on, that number increased to more than two-hundred (200) by the time Ms. Mercer was wrongfully terminated while out on FMLA leave. JA 33, ¶12.  In 2008, Ms. Mercer's co-worker, Paula Sinclair, split the caseload with Ms. Mercer her position as Benefits and Finance Coordinator. JA 33, ¶13.  Ms. Sinclair handled the

Laurel residents and Ms. Mercer handled the Largo residents. JA 33, ¶13. Ms. Sinclair was moved to another position within the Arc around 2008, but was never replaced and as a result, Ms. Mercer took over the entire caseload for both Laurel and Largo. JA 33, ¶13. Despite this fact, Plaintiff performed her job duties in a satisfactory manner that met or exceeded the employer's expectations throughout her employment. JA 6, ¶7. Plaintiff never received a negative performance evaluation. JA 6, ¶7. Plaintiff consistently received satisfactory feedback from her latest supervisor, Penny Green, regarding her job performance. JA 6, ¶7. There are currently two (2) employees who do the job that Ms. Mercer used to do by herself. JA 33, ¶14. Ms. Mercer's supervisor, Penny Green, was well aware that Ms. Mercer's co-worker was never replaced, and also knew that Ms. Mercer was performing satisfactorily in her position in spite of the short staffing. JA 33, ¶14.

Ms. Mercer was not the last person who would work with the Food Stamp applications for residents. JA 33, ¶15. As part of her position, Ms. Mercer would drop these applications off at the main DDS office, and it was up to the DDS employees to have the applications filed. JA 33-34, ¶15-16. Ms. Mercer denies that before she went out on FMLA leave, that she failed to obtain and maintain food stamp benefits for the recipients and Defendant's Motion to Dismiss was the first time that she has heard of this allegation. JA 34, ¶17. Ms. Mercer did not learn that The Arc was alleging that there was unopened mail until Ms. Mercer's

unemployment appeal wherein The Arc claimed for the first time that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 34, ¶18.  Ms. Mercer was never told anything about unopened mail at the time she was placed on administrative leave or at the time she was terminated. JA 34, ¶18.  Nobody ever explained to Ms. Mercer what was meant by "unsatisfactory job performance" and she was never presented with anything which would justify her termination. JA 34, ¶19.  Ms. Mercer has never received an unsatisfactory performance evaluation. JA 32, ¶5 and JA 6, ¶7.

## II.    Ms. Mercer is Injured, Hospitalized, Replaced and then Fired

On January 29, 2011, Plaintiff was involved in a non-work related head-on automobile collision and sustained severe injuries to her neck, back, spine, left shoulder and arm, amounting to a serious health condition. JA 6, ¶8 and JA 32, ¶3. As a result of her injuries, Plaintiff was unable to work and was placed on FMLA leave on January 31, 2011. JA 6, ¶8.  Plaintiff complied with all requirements under the FMLA and the employer's policies regarding the FMLA. JA 6, ¶8.

Ms. Mercer visited work while she was on FMLA leave on February 22, 2011. JA 34, ¶19 and JA 6, ¶9.  Ms. Mercer found that her office door was locked, the locks had been changed and someone else had taken over her office. JA 6, ¶9. Ms. Penny Green was on vacation at the time Ms. Mercer returned on February 22, 2011. JA 34, ¶19 and JA 6, ¶9.  When Ms. Green learned that Ms. Mercer had

returned from FMLA leave, she immediately returned from vacation, rushed into the office and placed Ms. Mercer on administrative leave on the same day. JA 34, ¶19 and JA 6, ¶9.  The same day, she was issued a letter from her supervisor, Ms. Penny Green, stating that she was being placed on administrative leave "due to unsatisfactory job performance and incomplete paperwork." JA 34, ¶19 and JA 6, ¶10.  Only a couple of months before Ms. Mercer went out on FMLA leave, Ms. Green gave Ms. Mercer a positive performance evaluation. JA 34, ¶19.  The administrative leave letter does not explain (1) how her job performance was unsatisfactory; (2) what is meant by "incomplete paperwork" and (3) does not mention any unopened mail. JA 28 and JA 34, ¶19.  Ms. Mercer was never given a verbal or written reprimand. JA 34, ¶20.

Although no reasons were given to Plaintiff regarding her placement on administrative leave, Ms. Green later told Plaintiff that the reason that she was placed on administrative leave was that she found unopened mail from June 2010. JA 6, ¶11.  However, in all of the years that Plaintiff worked for Defendant, she never had any issue with any unopened mail. JA 6, ¶11.  The alleged "unopened mail" was never presented to her at the time she was placed on administrative leave. JA 6, ¶11.  None of the alleged unopened mail was unopened at the time it was presented to Plaintiff for the first time two (2) months later. JA 6, ¶11.  Ms.

Mercer denies failing to open mail. JA 34, ¶16.  Ms. Mercer has never been shown any unopened envelopes. JA 34, ¶16.

Ms. Mercer never received a written reprimand, verbal reprimand or counseling during the time leading up to her exercise of FMLA leave or prior to being placed on administrative leave.  JA32, ¶¶4-5.  Ms. Mercer was not disciplined or counseled in any way for any of the allegations made against her. JA32-33, ¶¶5, 7.  There has been absolutely no evidence presented to Ms. Mercer that she did not open mail or that her performance was unsatisfactory.  JA32-33, ¶¶4-7.

Ms. Mercer denies all allegations of misconduct, unopened mail and unsatisfactory performance which were made against her while she was on FMLA leave.  JA 32-34, ¶¶16-17, 4-6.  Ms. Mercer denies that Ms. Weaver or anyone else counseled her in restoring benefits to eligible residents before she went on FMLA leave.  JA 33, ¶7.  Ms. Weaver did not have personal knowledge of the day-to-day operations in Ms. Mercer's department, as she was the Human Resources Director, not Ms. Mercer's supervisor. JA 33, ¶7.  Contrary to Ms. Weaver's affidavit, Ms. Mercer was not counseled "throughout November and December 2010".  JA 33, ¶7.  The emails that The Arc copies to its Motion as Exhibits 5 and 6 are routine communications that cannot be construed as reprimand or counseling. JA 33, ¶11. For Ms. Weaver to suggest that these communications were counseling is

inaccurate and misleading.  It was not unusual for benefits to lapse, since the

residents were mentally disabled individuals who could not assist Ms. Mercer with

paperwork. JA 33, ¶11.  Ms. Mercer needed counselors and program managers to

provide her with social security cards, bank statements and paystubs before she

could apply for Food Stamps for each resident. JA 33, ¶11.  Getting this

information from each individual to Ms. Mercer was time consuming and

sometimes impossible. JA 33, ¶11.  This was an expected incident to Ms. Mercer's

position as Finance and Benefits Coordinator, and this was always known by Ms.

Mercer's supervisor, Penny Green. JA 33, ¶11.

On March 23, 2011, Plaintiff was terminated by letter before she ever came

back from FMLA leave. JA 7, ¶12.  At this time, she was told by Penny Green that

she was being terminated due to unsatisfactory work performance and nothing

more. JA 7, ¶12.  Ms. Green did not give her any detail as to how her job

performance was satisfactory. JA 7, ¶12.  Plaintiff was offered no severance pay.

JA 7, ¶12.  Terminating Ms. Mercer's employment prior to any type of written

reprimand is a violation of the employee handbook, which provides for stepped

discipline. JA 34, ¶20.

Plaintiff always received satisfactory performance evaluations.  JA 7, ¶13.

As recently as October 22, 2010 (just before she was involved in the head-on

automobile collision and had to exercise her rights under FMLA), Plaintiff

8

received a satisfactory performance evaluation from Ms. Green. JA 7, ¶13. Only a month and a half before she left on FMLA leave, Ms. Penny Green scheduled, and Plaintiff attended, a three (3) day training class in Baltimore, at the Workforce Tech Center, from December 13-15, 2010. JA 7, ¶13 and JA 34, ¶21. The purpose of the class was for Plaintiff to advance her position at The Arc of Prince Georges County. JA 7, ¶13.

Penny Green has never given Plaintiff a verbal or written reprimand or notified that her performance was allegedly unsatisfactory. JA 34, ¶20 and JA 7, ¶14. This lack of warning or reprimand is in violation of the employee handbook, which provides for stepped discipline. JA 7, ¶14 and JA 34, ¶20.

While Plaintiff was temporarily out of the office on FMLA leave, she was replaced by a coworker. JA 7, ¶15 and JA 34, ¶22. Despite never having any performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15. Defendant terminated Plaintiff in retaliation for Plaintiff taking protected FMLA leave. JA 7, ¶15.

## <u>SUMMARY OF ARGUMENT</u>

The lower court followed an improper procedure below. It refused to accept as true the well-pleaded allegations of Mercer's Complaint, preferring to give preclusive effect to the *ex parte* summary-judgment declarations of Defendant's

human resources director witness, declarations which Defendant created specifically for this litigation, in violation of the requirements of Rule 12(b)(6) and Fed. R. Civ. P. 56.

The lower court refused to draw reasonable inferences in Mercer's favor, and indeed refused to allow Ms. Mercer to dispute Defendant's declarant, in violation of the requirements of Rule 56(d), Fed. R. Civ. P. 56. It accomplished this by crediting the *ex parte* statements contained in Defendant's human resources director's[1] affidavit without without crediting, or even mentioning in its opinion, the contrary statements made in Mercer's affidavit.

None of the evidence contained in Ms. Mercer's affidavit or facts contained within Ms. Mercer's Complaint are even mentioned in the lower court's opinion. Using this method, the lower court held that "The Arc presented undisputed evidence that it fired Plaintiff for her unsatisfactory work performance." JA 48. The lower court refused to give any weight to Ms. Mercer's Complaint and affidavit and Complaint, which establish that Defendant's stated reason for terminating her was pretext for FMLA interference and retaliation. JA 4-11; 32-40. Instead, the

---

[1]     Audrey Weaver, Defendant's Director of Human Resources, was Defendant's sole "witness" for its motion to dismiss or in the alternative for summary judgment. It is important to note that the human resources director had no personal knowledge of the reasons for terminating Ms. Mercer, since Ms. Mercer's supervisor, Penny Green, who is now in prison for stealing from Defendant's intellectually and developmentally disabled clients, was the one who created the allegations against Ms. Mercer while Ms. Mercer was out on FMLA leave.

lower court gave preclusive weight to the disputed summary-judgment declaration of Defendant's Human Resources Director, who had no personal knowledge of the facts at issue, whose statements were specifically created for Defendant's motion to dismiss and whose veracity has not been tested on cross examination.

## ARGUMENT

### STANDARD OF REVIEW

The standard of review for an order granting a Rule 12(b)(6) motion to dismiss is *de novo*. *Kendall v. Balcerzak*, 650 F.3d 515 (4th Cir.), *cert. denied*, 132 S. Ct. 402 (2011).

The standard of review for an order granting a Rule 56 motion for summary judgment is *de novo*. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 234 (4th Cir. 2007).

### DISCUSSION OF THE ISSUES

**I.     Rules 12(b)(6) and 56 Require Ms. Mercer's Allegations to Be Accepted as True**

Rule 12(b)(6) requires that the court to "accept as true all of the factual allegations contained in the complaint." *Gerner v. County of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (citing *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.2011)). The Court also "must view the Complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).

Ms. Mercer must show only that her claims are plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)*; Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Ms. Mercer is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-12 (2002). The factual allegations in the record need only be enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. At 556; *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012). *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011), cited *Swierkiewicz* for the proposition that the question was not whether Skinner would ultimately prevail, "but whether his complaint was sufficient to cross the federal court's threshold." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." 131 S. Ct. at 1296.

The bar is set low under 12(b)(6); a well-pleaded complaint may proceed even if the court believes that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Twombly*, 550 U.S. at 556; *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009).

The Supreme Court declared in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000), that in considering a Rule 50 motion for judgment as a matter of law, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." In *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 436 (4th Cir. 2001), this Court applied this holding in *Reeves* to Rule 56 motions for summary judgment: "Although we should review the record as a whole, we must disregard all evidence favorable to the moving party, here, the Angelos Firm, that a jury would not be required to believe. *Id.* at 151."

An FMLA claim consists of two possible grounds for violation: interference and retaliation. *Yashenko v. Harrah's*, 446 F.3d 541, 546 (4th Cir. 2006). The lower court erred when it did not accept MS. Mercer's allegations as true, and as a result dismissed both Ms. Mercer's interference claim and her retaliation claim.

## II.   The District Court Erred When it Dismissed Ms. Mercer's Interference Claim

### A.   The Lower Court did Not Consider or Even Mention Any of Ms. Mercer's Evidence

The lower court's analysis in dismissing Ms. Mercer's "interference" claim consists of only one short paragraph. JA 47. The lower court's reasoning for dismissing the interference claim is that "[h]ere, there is no dispute that Plaintiff

was entitled to FMLA leave. The Arc presented undisputed evidence, however, that Plaintiff failed to perform her duties satisfactorily before she took that leave." JA 47.

The lower court disregarded all of Ms. Mercer's evidence that Plaintiff performed her duties well and that The Arc's allegations that Ms. Mercer did not perform her duties well was a pretext to terminate Ms. Mercer in violation of her rights under FMLA.  In dismissing Ms. Mercer's interference claim, the lower court did not even so much as mention any of Ms. Mercer's evidence or any of the allegations contained in Ms. Mercer's Complaint. JA 46-48.  Failing to consider any of Ms. Mercer's evidence is reversible error because all of Ms. Mercer's allegations and evidence are to be accepted as true for a motion to dismiss and motion for summary judgment.

### B.    There is a Dispute of Fact As to Whether Plaintiff Performed her Duties Well

Whether or not Plaintiff performed her duties well is disputed on the record. Plaintiff began her employment at The Arc of Prince Georges County on July 26, 2004. JA 5, ¶6.  During the time she worked for Defendant, Plaintiff's responsibilities increased significantly. JA 6, ¶6.  When Ms. Mercer began in her position as Finance and Benefits Coordinator, she had about 90 residents. JA 33, ¶12.  As time went on, that number increased to more than two-hundred (200) by the time Ms. Mercer was wrongfully terminated while out on FMLA leave. JA 33,

¶12.  In 2008, Ms. Mercer's co-worker, Paula Sinclair, split the caseload with Ms. Mercer her position as Benefits and Finance Coordinator. JA 33, ¶13.  Ms. Sinclair was moved to another position within the Arc around 2008, but was never replaced and as a result, Ms. Mercer took over the entire caseload. JA 33, ¶13.  Despite this fact, Plaintiff performed her job duties in a satisfactory manner that met or exceeded the employer's expectations throughout her employment. JA 6, ¶7.

Plaintiff never received a negative performance evaluation. JA 32, ¶5 and JA 6, ¶7, JA 7, ¶13.  Plaintiff consistently received satisfactory feedback from her latest supervisor, Penny Green, regarding her job performance. JA 6, ¶7.  Only a couple of months before Ms. Mercer went out on FMLA leave, Ms. Green gave Ms. Mercer a positive performance evaluation. JA 34, ¶19, JA 7, ¶13.  There are currently two (2) employees who do the job that Ms. Mercer used to do by herself before her termination. JA 33, ¶14.  Ms. Mercer's supervisor, Penny Green, was well aware that Ms. Mercer's co-worker was never replaced, and also knew that Ms. Mercer was performing satisfactorily in her position in spite of the short staffing. JA 33, ¶14.  Only a month and a half before she left on FMLA leave, Ms. Penny Green scheduled, and Plaintiff attended, a three (3) day training class in Baltimore, at the Workforce Tech Center, from December 13-15, 2010. JA 7, ¶13 and JA 34, ¶21.  The purpose of the class was for Plaintiff to advance her position at The Arc of Prince Georges County. JA 7, ¶13.  Despite never having any

performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15.

Ms. Mercer denies the performance-related allegations that Defendant's human resources director, Audrey Weaver, made against her for the purposes of litigation. Ms. Mercer denies that before she went out on FMLA leave, that she failed to obtain and maintain food stamp benefits for the recipients and Defendant's Motion to Dismiss was the first time that she has heard of this allegation. JA 34, ¶17. Ms. Mercer did not learn that The Arc was alleging that there was unopened mail until Ms. Mercer's unemployment appeal wherein The Arc claimed for the first time that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 34, ¶18. Ms. Mercer was never told anything about unopened mail at the time she was placed on administrative leave or at the time she was terminated. JA 34, ¶18. Nobody ever explained to Ms. Mercer what was meant by "unsatisfactory job performance" and she was never presented with anything which would justify her termination. JA 34, ¶19. Ms. Mercer denies failing to open mail. JA 34, ¶16. Ms. Mercer has never been shown any unopened envelopes. JA 34, ¶16. There has been absolutely no evidence presented to Ms. Mercer that she did not open mail or that her performance was unsatisfactory. JA32-33, ¶¶4-7. Ms. Mercer denies all allegations of misconduct, unopened mail

and unsatisfactory performance which were made against her while she was on FMLA leave.  JA 32-34, ¶¶16-17, 4-6.  Ms. Mercer denies that Ms. Weaver or anyone else counseled her in restoring benefits to eligible residents before she went on FMLA leave.  JA 33, ¶7.  Contrary to Ms. Weaver's affidavit, Ms. Mercer was not counseled "throughout November and December 2010".  JA 33, ¶7.  The emails that The Arc cites as evidence of bad performance are routine communications that cannot be construed as reprimand or counseling. JA 33, ¶11.  For Ms. Weaver to suggest that these communications were counseling is inaccurate and misleading.  It was not unusual for benefits to lapse, since the residents were mentally disabled individuals who could not assist Ms. Mercer with paperwork. JA 33, ¶11.  Ms. Mercer needed counselors and program managers to provide her with social security cards, bank statements and paystubs before she could apply for Food Stamps for each resident. JA 33, ¶11.  Getting this information from each individual to Ms. Mercer was sometimes impossible. JA 33, ¶11.  This was an expected incident to Ms. Mercer's position as Finance and Benefits Coordinator, and this was always known by Ms. Mercer's supervisor, Penny Green. JA 33, ¶11.

17

**C.    Ms. Mercer was Terminated Under Circumstances Which Indicate that Defendant's Stated Reasons (Performance-Related) for Terminating Her are Pretextual**

The circumstances under which Plaintiff was terminated indicate that Defendant's stated reason, performance-related, is a pretext.  Plaintiff always received positive performance evaluations in all of her years working for Defendant, including a positive performance evaluation shortly before she went out on FMLA leave. JA 6, ¶7; JA 34, ¶19; JA 7, ¶13.  On March 23, 2011, Plaintiff was terminated by letter before she ever came back from FMLA leave. JA 7, ¶12.  At this time, she was told by her supervisor, Ms. Green, that she was being terminated due to unsatisfactory work performance and nothing more. JA 7, ¶12.  Ms. Green did not give her any detail as to how her job performance was unsatisfactory. JA 7, ¶12.  Ms. Mercer was not disciplined or counseled in any way, before or after she went out on FMLA leave, for any of the allegations made against her.  JA32-33, ¶¶5, 7.  Despite never having any performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15.

Ms. Mercer visited work while she was on FMLA leave on February 22, 2011. JA 34, ¶19; JA 6, ¶9.  Ms. Mercer found that her office door was locked, the locks had been changed and someone else had taken over her office. JA 6, ¶9.  Ms. Green was on vacation at the time Ms. Mercer returned on February 22, 2011. JA

18

34, ¶19 and JA 6, ¶9. When Ms. Green learned that Ms. Mercer had returned from FMLA leave, she immediately returned from vacation, rushed into the office and placed Ms. Mercer on administrative leave on the same day. JA 34, ¶19and JA 6, ¶9. The administrative leave letter that was given to Ms. Mercer does not explain (1) how her job performance was unsatisfactory; (2) what is meant by "incomplete paperwork" and (3) does not mention any unopened mail. *See* Plaintiff's Administrative Leave Letter, JA 28 and JA 34, ¶19. The letter stated only that she was being placed on administrative leave "due to unsatisfactory job performance and incomplete paperwork." JA 34, ¶19 and JA 6, ¶10.

Ms. Green later shifted her reasons for terminating Ms. Mercer during Ms. Mercer's unemployment appeal, at which time The Arc alleged for the first time that there was unopened mail and therefore that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 34, ¶18; JA 6, ¶11. In all of the years that Plaintiff worked for Defendant, she never had any issue with any unopened mail. JA 6, ¶11. The alleged "unopened mail" was never presented to Ms. Mercer. JA 6, ¶11. None of the alleged unopened mail was unopened at the time it was presented to Plaintiff for the first time two (2) months later. JA 6, ¶11. Ms. Mercer denies failing to open mail. JA 34, ¶16. Ms. Mercer has never been shown any unopened envelopes. JA 34, ¶16.

There has been absolutely no evidence presented to Ms. Mercer that she did not open mail or that her performance was unsatisfactory. JA32-33, ¶¶4-7. Ms. Mercer denies all allegations of misconduct, unopened mail and unsatisfactory performance which were made against her while she was on FMLA leave. JA 32-34, ¶¶16-17, 4-6. Ms. Mercer denies that Ms. Weaver or anyone else counseled her in restoring benefits to eligible residents before she went on FMLA leave. JA 33, ¶7.

On March 23, 2011, Plaintiff was terminated by letter before she ever came back from FMLA leave. JA 7, ¶12. At this time, she was told by Penny Green that she was being terminated due to unsatisfactory work performance and nothing more. JA 7, ¶12. Ms. Green did not give her any detail as to how her job performance was satisfactory. JA 7, ¶12. Terminating Ms. Mercer's employment prior to any type of written reprimand is a violation of the employee handbook, which provides for stepped discipline. JA 34, ¶20. Ms. Mercer was never told anything about unopened mail at the time she was placed on administrative leave or at the time she was terminated. JA 34, ¶18. Nobody ever explained to Ms. Mercer what was meant by "unsatisfactory job performance" and she was never presented with anything which would justify her termination. JA 34, ¶19.

While Plaintiff was temporarily out of the office on FMLA leave, she was replaced by a coworker. JA 7, ¶15 and JA 34, ¶22. Despite never having any

performance issues, Penny Green manufactured complaints about Plaintiff's job

performance, since Plaintiff had already been replaced by a co-worker, and in

violation of the FMLA. JA 7, ¶15.

### D.   A Jury Can Infer Pretext from Defendant's Shifting Reasons for Plaintiff's Termination

Defendant's reason for Ms. Mercer's termination are inconsistent and shifted

since she first received the administrative letter from Ms. Green.  The

administrative leave letter that was given to Ms. Mercer on February 22, 2011

stated that she is being placed on administrative leave "due to unsatisfactory job

performance and incomplete paperwork." JA 28.  The letter does not mention any

unopened mail or any allegations of "misconduct." JA 28.  The termination letter

that was given to Ms. Mercer on March 23, 2011states that she is being terminated

"due to unsatisfactory job performance." JA 31.  The termination letter does not

mention any unopened mail or any allegations of "misconduct." JA 31.  Ms. Green

later shifted her reasons for terminating Ms. Mercer during Ms. Mercer's

unemployment appeal, at which time Ms. Green alleged for the first time that there

was unopened mail while Ms. Mercer was out on FMLA leave and therefore Ms.

Mercer had been fired for "misconduct." JA 34, ¶18; JA 6, ¶11.  The alleged

"unopened mail" was never presented to Ms. Mercer. JA 6, ¶11.

Providing different explanations at different times is evidence of pretext, and

creates a disputed issue of material fact.  "The fact that an employer has offered

inconsistent post-hoc explanations for its employment decisions is probative of pretext." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 646-647 (4th Cir. 2002); *EEOC v. Sears Roebuck*, 243 F.3d 846, 852-53 (4th Cir.2001). Shifting, after-the-fact, and/or inherently incredible reasons offered to justify a promotion decision are likewise highly probative of pretext or unlawful animus. *See, e.g., Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 647 (4th Cir. 2002) (upholding a jury finding of pretext based on record evidence establishing that the employer relied on inconsistent and after-the-fact explanations to justify its employment decision and conducted the promotion selection process in an unequal manner); *EEOC v. Sears and Roebuck*, 243 F.3d at 852-53 (reversing grant of summary judgment in part because of employer's inconsistent explanations); *E.E.O.C. v. Town & Country Toyota, Inc.*, 7 Fed.Appx. 226, 2001 WL 369675 (4th Cir. 2003) *4 ("Contradictions between an employer's proffered explanation and the contemporaneous statements of the employer are convincing evidence of pretext."); *Williams v. Nashville Network*, 132 F.3d 1123, 1132 (6th Cir. 1997) (reversing denial of defendant's motion for judgment because the decision-maker proffered three different reasons for failure to hire plaintiff). Therefore, a reasonable jury could infer that Defendant's inconsistent reasons for Ms. Mercer's termination are a pretext because of Defendant's inconsistent and shifting reasons for Ms. Mercer's termination.

### E.    Plaintiff Has Stated a Legally Sufficient Claim of Interference With Her Protected FMLA Rights

The Family and Medical Leave Act states that an employee who takes FMLA leave "shall be entitled, on return from such leave - (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. §2614(a)(1).  29 U.S.C. §2615(a)(1) states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  Accepting all allegations in the Complaint as true, Ms. Mercer has set out a *prima facie* case of interference with her FMLA rights.  JA 4-8.

Within her Complaint, Ms. Mercer has stated that she took FMLA leave, that she was entitled to take FMLA leave and that The Arc was an eligible employer. JA 5, ¶¶3-4.  Plaintiff stated that she performed well in her job since 2004 and received positive performance evaluations. JA 5-7, ¶¶6-7, 13.  She took FMLA leave because of injuries from an automobile accident in January 2011, and she complied with the requirements to take FMLA leave. JA 6, ¶8.  Ms. Mercer returned to work and found her office door was locked, someone had taken over her office and she was placed on administrative leave the same day for unsatisfactory job performance and incomplete paperwork. JA 6-7, ¶¶9-10, 15.

Ms. Mercer was taken off of administrative leave, terminated on March 23, 2011 and was never informed regarding the reasons for her termination. JA 6-7, ¶¶11-12. Ms. Mercer was never given a verbal or written reprimand, in violation of the employee handbook, which provides for stepped discipline. JA 7, ¶¶14. Ms. Mercer was first told of the allegation that she had unopened mail two (2) months after her termination, but was never shown any unopened mail. JA 6, ¶11. Ms. Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker while she was out on FMLA leave, in violation of the FMLA. JA 7, ¶15. Plaintiff was terminated in retaliation for taking protected FMLA leave. JA 7, ¶15.

Ms. Mercer was placed on administrative leave on the first day she came from from FMLA leave and was terminated shortly thereafter. JA 34, ¶19 and JA 6, ¶9-10. Ms. Mercer was replaced by another employee while she was away on FMLA leave, in violation of the "interference" or "entitlement" provisions of 29 U.S.C. §2615(a)(1): "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." JA 7, ¶15 and JA 34, ¶22. These, and other allegations from The Arc, are pretextual and interfere with her FMLA rights, as contemplated by FMLA, 29 U.S.C. §2615(a) and 29 U.S.C. §2614. JA 6-8, ¶¶10-11, 15, 19-23.

There are disputed material facts as to whether Ms. Mercer would have been terminated had she not taken FMLA leave. As is noted in more detail above, Ms. Mercer was a long-time employee for Defendant and only received positive performance evaluations during her employment. She was fired under circumstances which indicate pretext and Defendant's reasons for her termination have shifted and do no make sense. Defendant's only evidence comes from its human resources director—Defendant's witness was not Ms. Mercer's supervisor and was not involved in the daily operations of Ms. Mercer's position.[2]

### F. There Are Disputed Issues of Material Fact Regarding Ms. Mercer's Claim of Interference With Her FMLA Rights

#### 1. Defendant's Human Resources Director Makes Unsupported Assertions

Defendant relies solely on the allegations contained in the affidavit of Ms. Audrey Weaver, Defendant's Human Resources Director. A declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence at trial, and show that the affiant is competent to testify on the matters stated. Fed.R.Civ.Pro. 56(c)(4). It is important to note that, throughout Ms. Weaver's affidavit, she does not identify from whom she has received the information upon which the assertions in her affidavit rely. JA 15-18. In her position as Human Resources Director, Ms. Weaver was not involved in the

---

[2]     *See* Section (II)(F)(1) of this motion, *infra*.

day-to-day operations of Ms. Mercer's position as Finance and Benefits

Coordinator. JA 33, ¶7. It is curious that The Arc relies solely on the affidavit of

the Human Resources Director, and does not so much as mention Ms. Mercer's

direct supervisor (Penny Green). Ms. Green is the author of both the termination

letter and of the letter placing Ms. Mercer on administrative leave. JA 28 and 31.

At the time Defendant filed its motion to dismiss, Penny Green was no longer

Defendant's employee because she had been indicted for stealing $166,137 in cash

and goods from people with intellectual and developmental disabilities in her

position with Defendant.[3]  Both the administrative leave letter and the termination

letter were drafted by Ms. Green, and Ms. Green was the one who terminated Ms.

Mercer. JA 28, 31.  Ms. Weaver did not have personal knowledge of the day-to-day

operations in Ms. Mercer's department, as she was the Human Resources Director,

not Ms. Mercer's supervisor. JA 33, ¶7.  Therefore, the assertions that Ms. Weaver

makes in her affidavit should not be considered or given any weight as her

statements do not comply with Fed.R.Civ.Pro. 56(c)(4).

Within her affidavit, Human Resources Director Audrey Weaver incorrectly

asserts that in 2009, while Ms. Mercer was on FMLA leave, "Defendant learned

that 'many of its eligible Residents were no longer receiving Food Stamp benefits

that they previously had received.'"  JA 16.  Ms. Weaver then asserts that "[t]hese

---

3    http://www.justice.gov/usao/md/Public-Affairs/press_releases/Press12/
EmployeePleadsGuiltytoStealingfromNon-profitOrganizationandupto72ofitsDisabled
Clients.html

26

issues were addressed and brought to Plaintiff's attention when she returned from leave, and she was instructed to get the Residents back on line with regard to their benefits." JA 16. While Ms. Mercer was on FMLA leave in 2009 in connection with a surgery, Ms. Weaver's assertions that residents were no longer receiving Food Stamp benefits and that Ms. Mercer was instructed to restore those benefits, is incorrect and misleading. Ms. Weaver does not explain who told her, if anyone, that residents were not receiving benefits or which residents were not receiving benefits. Ms. Weaver does not mention in her affidavit that it was routine for some residents to not receive benefits, because of the procedure required to keep residents on benefits. Ms. Weaver does not cite to any counseling or reprimand issued to Ms. Mercer for this allegedly wrongful behavior, since there was no counseling or reprimand. If Ms. Mercer was failing in her job in 2009, one would expect that she would have been counseled or reprimanded and she would not have received positive performance evaluations. Ms. Mercer denies that she had any performance issue in April 2009 and states unequivocally that "I was never counseled or instructed to restore benefits to individuals in connection with my FMLA leave in 2009." JA 33, ¶8. Ms. Mercer disputes that Defendant's human resources director's statement are true – the human resources director does not provide any evidence to support her statement, she only makes unsupported assertions. The Court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), nor "accept

27

conclusory factual allegations devoid of any reference to actual events." *Lanford v. Prince George's County,* 199 F. Supp. 2d 297, 305 (D. Md. 2002) (citing *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)).

Within her affidavit, Human Resources Director Audrey Weaver mischaracterizes Ms. Mercer's responsibilities as Finance and Benefits Coordinator. She states that "[t]hroughout November and December 2010, Defendant informed Plaintiff of the identity of all such persons not receiving benefits, and instructed her that, consistent with her duties, she was to get such benefits reinstated for those eligible residents." JA 16, ¶7. First, this instruction never happened in the way Ms. Weaver characterizes it. Anybody who worked in Ms. Mercer's department, including Ms. Mercer's supervisor, Penny Green, knows that it is completely normal for a number of Residents to not receive benefits during a given month. JA 33, ¶9, 11. It was not unusual for benefits to lapse, since the residents were mentally disabled individuals who often could not assist Ms. Mercer with paperwork. JA 33, ¶11. Ms. Mercer needed counselors and program managers to provide her with social security cards, bank statements and paystubs. JA 33, ¶11. These counselors and managers would then need to provide these documents to Ms. Mercer in order for her to apply for Food Stamps for each resident. JA 33, ¶11. Getting this information from each individual to Ms. Mercer was sometimes impossible. JA 33, ¶11.

Ms. Mercer's job responsibilities increased and her co-workers became fewer, yet she still managed to perform her job satisfactorily and always received positive performance evaluations. When Ms. Mercer began in her position as Finance and Benefits Coordinator, she had about ninety (90) residents that she took care of. JA 33, ¶12. As time went on, that number increased to more than two-hundred (200) by the time Ms. Mercer was wrongfully terminated. JA 33, ¶12. In 2008, Ms. Mercer's co-worker, Paula Sinclair, split Ms. Mercer's caseload. JA 33, ¶13. Ms. Sinclair was moved to a different position within The Arc around 2008, but was never replaced. JA 33, ¶13. There are currently two (2) different employees who are doing Ms. Mercer's former job. JA 33, ¶14. Ms. Mercer's supervisor, Penny Green, was well aware that Ms. Mercer's co-worker was never replaced, and also knew that Ms. Mercer was performing satisfactorily in her position in spite of the short staffing. JA 33, ¶14. In fact, on November 19, 2010 (not long before Ms. Mercer went out on FMLA leave in January 2011), Ms. Mercer received a performance evaluation wherein she received a "satisfactory" in every category, except in the category of "Provide the accounting office with the necessary information regarding the monthly issuance of PNA checks", wherein she received an "above average." JA 35-36.

Until she was out of the office on FMLA leave, Ms. Mercer had never been counseled or reprimanded for residents failing to receive Food Stamp benefits.

JA32, ¶¶4-5.  This is because it is understood as part of the nature of the position and the procedure, that some residents will not receive their benefits. JA33, ¶11. The residents were mentally handicapped individuals who needed to provide other Arc employees with a social security card, bank statements and paystubs. JA33, ¶11.  These other Arc employees would then need to provide these documents to Ms. Mercer in order for her to apply for Food Stamps for each resident. JA33, ¶11. Getting this information from each individual was sometimes impossible. JA33, ¶11.  This was an expected incident to the position. JA33, ¶11. Furthermore, Ms. Mercer was not the last person to work with the Food Stamp applications. JA 33, ¶15.  She would drop these applications off at the main DDS office, and it was up to DDS employees to have the applications filed. JA 33-34, ¶15.   For Ms. Weaver to imply that Ms. Mercer was counseled for failing to have benefits delivered to residents is simply incorrect.  Most importantly, there is a disputed issue of fact as to Ms. Mercer's job performance such that dismissal of this law suit was in error.

### 2.    Unsupported Allegations of Unopened Mail

As a result of a head-on automobile collision wherein Mr. Mercer sustained serious injuries to her neck, back, left shoulder and arm, Ms. Mercer went out on FMLA leave at the end of January 2011. JA 6, ¶8 and JA 32, ¶3.  Ms. Weaver asserts in her affidavit that "in February 2011, Defendant discovered numerous unopened envelope packets in Plaintiff's office..." JA 16, ¶8.  Ms. Mercer denies

failing to open mail. JA 34, ¶16.  Ms. Mercer has never been shown any unopened

envelopes. JA 34, ¶16.  If there were unopened envelopes in February 2011, those

envelopes would have been from mail received in February 2011, since Ms.

Mercer was not in the office due to her FMLA leave while she recovered from her

injuries.  Ms. Weaver's affidavit does not mention any dates for the alleged

unopened mail and The Arc presents no evidence that the alleged "unopened mail"

was not from the time Ms. Mercer was out on FMLA leave. JA 6, ¶11; JA 34, ¶16.

If such mail did actually exist, Ms. Mercer cannot be expected to open mail that is

in her office while she is out on FMLA leave.  Unopened mail is not, and never

was, part of the record in this case.  Defendant's human resources manager is

making assertions that are unsupported by any evidence and therefore should not

have been considered by the lower court.

Ms. Weaver does not explain why Ms. Mercer was not shown any

documentation regarding Defendant's "investigation" into her behavior.  Ms.

Weaver's affidavit states that in March 2011, "Defendant had concluded its

investigation and determined that Plaintiff had grossly deviated from her job's

requirements by failing to obtain and maintain Food Stamp benefits for 99 of the

160 recipients in Defendant's program." JA 17, ¶11.  Ms. Mercer denies that before

she went out on FMLA leave, that she failed to obtain and maintain food stamp

benefits for the recipients. JA 34, ¶17. Defendant's motion to dismiss is the first

time that Ms. Mercer has heard this allegation. JA 34, ¶17. If this allegation were true, one would expect The Arc to provide Ms. Mercer with this information. If an investigation was actually being done, it would also be expected that The Arc would question Ms. Mercer regarding the allegations, to hear her side of the story. Ms. Weaver does not point to any written investigation within her affidavit. It appears as if no real investigation was ever actually done, and that The Arc's stated reasons for terminating Ms. Mercer are merely pretextual. Again, Defendant's human resources director is making assertions that are unsupported by the record and therefore should not be considered.

The Arc's stated reasons for placing Ms. Mercer on administrative leave were pretextual. Ms. Mercer returned from FMLA leave on February 22, 2011. JA 34, ¶19 and JA 6, ¶9. The same day, she was issued a letter from her supervisor, Ms. Penny Green, stating that she was being placed on administrative leave "due to unsatisfactory job performance and incomplete paperwork." JA 28. Only a couple of months before Ms. Mercer went out on FMLA leave, Ms. Green gave Ms. Mercer a positive performance evaluation. JA 35-36. Ms. Mercer received an "above average" in the skill area "[p]rovide the accounting office with the necessary information regarding the monthly issuance of PNA checks." JA 36. The letter placing Ms. Mercer on administrative leave does not explain (1) how her job performance was unsatisfactory; and (2) what is meant by "incomplete paperwork". JA 28. Importantly, the letter also also does not mention any unopened mail. JA 28.

It is expected that if there were actually unopened mail as The Arc has claimed, that this infraction would at least be mentioned in this letter.  It is also worth note that the March 23, 2011 termination letter does not say anything about unopened mail, and only cites "unsatisfactory job performance" as the reason for Ms. Mercer's termination.  JA 31.  Ms. Mercer was never given a verbal or written reprimand, in violation of the employee handbook, which provides for stepped discipline. JA 34, ¶20.  Ms. Mercer did not learn that Defendant was alleging that there was unopened mail until Ms. Mercer's unemployment appeal wherein The Arc claimed that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 37.  After a hearing on the issues, the Hearing Examiner specifically held that Ms. Mercer's job performance was not deficient:

> [C]laimant was on extended medical leave and was not released to return from work until March 18, 2011. **There may have been certain deficiencies so far as unopened mail, not responding to mail, not responding to other demands of the job, but the employer did not convince the undersigned Hearing Examiner that it was through any neglect of claimant.** She absent for a substantial period of time. She was a long-term employee. She had no prior disciplinary actions. Then, while on  leave, she is placed on administrative leave for job performance issues and then just days after she is released to return to work, claimant is discharged. Misconduct was not proven.

JA 38.

Ms. Mercer was never told anything about unopened mail at the time she was placed on administrative leave or at the time she was terminated. JA 34, ¶18.

Nobody ever explained to her what was meant by "unsatisfactory job performance" and she was never presented with anything which would justify her termination. JA 34, ¶19.  Ms. Mercer has never received an unsatisfactory performance evaluation. JA 32, ¶5 and JA 6, ¶7.  Ms. Green never gave Ms. Mercer a verbal or written reprimand or notified her that her performance was allegedly unsatisfactory. JA 34, ¶20 and JA 7, ¶14.  Only a month and a half before she left on FMLA leave, Ms. Penny Green scheduled Ms. Mercer to attend three (3) day class in Baltimore, at the Workforce Tech Center, which was intended to advance Ms. Mercer's career at The Arc. JA 7, ¶13 and JA 34, ¶21.  This suggests that Ms. Mercer was performing well in her position.

### 3.    Ms. Mercer is Locked Out of Her Office

When Ms. Mercer returned from FMLA leave on February 22, 2011, there were locks on her office doors. JA 6, ¶9.  Ms. Mercer realized at this point that someone had taken over her office. JA 6, ¶9.  Ms. Green was on vacation at the time, but when she learned that Ms. Mercer had returned from FMLA leave, she immediately returned from vacation and rushed into the office on February 22, 2011. JA 34, ¶19and JA 6, ¶9.  On the same day, Ms. Green placed Ms. Mercer on administrative leave. JA 34, ¶19 and JA 6, ¶10.  It appeared as if Ms. Mercer was replaced by another employee while she was out on FMLA leave.

The Family and Medical Leave Act states that an employee who takes FMLA leave "shall be entitled, on return from such leave - (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. §2614(a)(1). Ms. Mercer was placed on administrative leave on the first day she came from from FMLA leave and was terminated shortly thereafter. JA 34, ¶19; JA 6, ¶9; JA 31. It appears that Ms. Mercer was replaced by another employee while she was away on FMLA leave, in violation of the "interference" or "entitlement" provisions of 29 U.S.C. §2615(a)(1): "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." There are disputed material facts as to whether Ms. Mercer would have been terminated had she not taken FMLA leave.

There are disputed issues of material fact as to whether or not Mr. Mercer engaged in any wrongful employment activities, such as failing to open mail and wrongfully allowing benefits to lapse for residents. There are also genuine issues of material fact as to whether Ms. Penny Green created allegations against Ms. Mercer as a pretext interfering with the the lawful usage of Ms. Mercer's FMLA leave. Again, I point out that Ms. Mercer had no performance issues before taking

FMLA leave, she had an above average evaluation just a couple of months prior to taking leave, she had recently been sent to training classes to further her career, she was never reprimanded for the stated wrongful activities and to date has not been provided with any credible evidence that she engaged in any wrongful or negative employment activities. The Arc's stated reasons for terminating her are contrary to the evidence and simply do not make sense. Importantly, they create disputed material issues of fact.

To prevail on an interference (or entitlement) claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. *See Edgar v. JAC Products, Inc.*, 443 F. 3d 501, 507 (6th Cir. 2006); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005). "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Edgar* at 507. The Arc does not dispute the fact that Ms. Mercer was entitled to FMLA leave and that she gave adequate notice of the leave. The Arc's only argument is that Ms. Mercer was not

entitled to reinstatement when she returned from leave. There are myriad material issues of fact as to that issue, which are outlined above.

### G. The Lower Court Erred in Crediting the Affidavit Testimony of Defendant's Human Resources Employee While Not Resolving Disputed Issues in Favor of Ms. Mercer

The lower court erred under both Rule 12(b)(6) and Rule 56 both in relying on Ms. Weaver's summary judgment declaration while disregarding Ms. Mercer's summary judgment declaration on the question of (1) whether or not her performance was satisfactory; and (2) whether Ms. Mercer improperly failed to maintain and reinstate food stamp and social security benefits.[4]

Rule 12(b)(6) requires that the court to "accept as true all of the factual allegations contained in the complaint." *Gerner v. County of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (citing *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.2011)). The Court also "must view the Complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001).

Ms. Mercer provides an abundance of evidence that the lower court should have accepted as true, that her performance was not deficient and that she did not improperly fail to maintain and reinstate food stamp and social security benefits. To avoid another recitation of the fact, please see sections (II)(B) and (II)(C) of this

---

[4]    These are the two only bases for the lower court's opinion that are provided by the lower court. JA 47-48.

motion and JA 4-7; 32-38. The lower court did not so much as mention any of the evidence provided by Plaintiff in its opinion. JA 41-49. At this stage in the litigation, before any discovery in this case has been taken, the lower court was required to treat all of Ms. Mercer's evidence as true, which it did not do.

### III. The District Court Erred When it Dismissed Ms. Mercer's Retaliation Claim

#### A. The Lower Court Erred When it did Not Consider or Even Mention Any of Ms. Mercer's Evidence in its Opinion

The lower court's analysis in dismissing Ms. Mercer's FMLA retaliation claim is only one paragraph long. JA 48. The lower court stated that "[a]s discussed above, The Arc presented undisputed evidence that it fired Plaintiff for her unsatisfactory work performance. Plaintiff has not satisfied her burden to establish that The Arc's 'proffered explanation is pretext for FMLA retaliation." JA 48. The lower court even went as far as to state that "there is no genuine dispute that Plaintiff's failures to maintain and reinstate The Arc's clients' Food Stamp and Social Security benefits were the reason she was terminated, or that The Arc was badly motivated in so asserting." JA 48.

The lower court erred under both Rule 12(b)(6) and Rule 56 both in relying on Ms. Weaver's summary judgment declaration while disregarding Ms. Mercer's summary judgment declaration on the question of (1) whether or not her performance was satisfactory; and (2) whether Ms. Mercer improperly failed to

maintain and reinstate food stamp and social security benefits. Rule 12(b)(6) requires that the court to "accept as true all of the factual allegations contained in the complaint." *Gerner v. County of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (citing *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.2011)). The Court also "must view the Complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001).

Ms. Mercer provides an abundance of evidence that the lower court should have accepted as true, that her performance was not deficient and that she did not improperly fail to maintain and reinstate food stamp and social security benefits. To avoid another recitation of the fact, please see sections (II)(B) and (II)(C) of this motion and JA 4-7; JA 32-38. The lower court did not so much as mention any of the evidence provided by Plaintiff in its opinion. JA 41-49. At this stage in the litigation, before any discovery in this case has been taken, the lower court was required to treat all of Ms. Mercer's evidence as true, which it did not do.

### B.    There is a Material Dispute of Fact As to Whether Defendant Actually Knew that Plaintiff Performed Her Duties Well

As is discussed above, the lower court disregarded all of Ms. Mercer's evidence that Plaintiff's work performance was satisfactory and that it stated reason for terminating Ms. Mercer while she was out on FMLA leave was a pretext for retaliation for taking protected FMLA leave. In fact, Ms. Mercer specifically denies that she failed to maintain and reinstate benefits for the residents. JA 34, ¶17; JA 32-

39

34, ¶¶16-17, 4-6.  Plaintiff performed her job duties in a satisfactory manner that met or exceeded the employer's expectations throughout her employment. JA 6, ¶7. Plaintiff never received a negative performance evaluation. JA 32, ¶5 and JA 6, ¶7, JA 7, ¶13.  Plaintiff always received positive performance evaluations in all of her years working for Defendant, including a positive performance evaluation only a couple of months before she went out on FMLA leave. JA 6, ¶7; JA 34, ¶19; JA 7, ¶13.  Plaintiff consistently received satisfactory feedback from her latest supervisor, Penny Green, regarding her job performance. JA 6, ¶7.  There are currently two (2) employees who do the job that Ms. Mercer used to do by herself. JA 33, ¶14.  Ms. Mercer's supervisor, Penny Green, was well aware that Ms. Mercer's co-worker was never replaced, and also knew that Ms. Mercer was performing satisfactorily in her position in spite of the short staffing. JA 33, ¶14.  Only a month and a half before she left on FMLA leave, Ms. Penny Green scheduled, and Plaintiff attended, a three (3) day training class in Baltimore, at the Workforce Tech Center, from December 13-15, 2010. JA 7, ¶13 and JA 34, ¶21.  The purpose of the class was for Plaintiff to advance her position at The Arc of Prince Georges County. JA 7, ¶13.  Despite never having any performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15.

40

Ms. Mercer denies the performance-related allegations that Defendant's human resources director, Audrey Weaver, made against her.  Ms. Mercer denies that before she went out on FMLA leave, that she failed to obtain and maintain food stamp benefits for the recipients and Defendant's Motion to Dismiss was the first time that she has heard of this allegation. JA 34, ¶17.  Ms. Mercer did not learn that The Arc was alleging that there was unopened mail until Ms. Mercer's unemployment appeal wherein The Arc claimed for the first time that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 34, ¶18.  Ms. Mercer denies failing to open mail. JA 34, ¶16. Ms. Mercer has never been shown any unopened envelopes. JA 34, ¶16. There has been absolutely no evidence presented to Ms. Mercer that she did not open mail or that her performance was unsatisfactory.  JA32-33, ¶¶4-7.  Ms. Mercer denies all allegations of misconduct, unopened mail and unsatisfactory performance which were made against her while she was on FMLA leave.  JA 32-34, ¶¶16-17, 4-6. Ms. Mercer denies that Ms. Weaver or anyone else counseled her in restoring benefits to eligible residents before she went on FMLA leave.  JA 33, ¶7.  Contrary to Ms. Weaver's affidavit, Ms. Mercer was not counseled "throughout November and December 2010."  JA 33, ¶7.  The emails that The Arc copies to its Motion as Exhibits 5 and 6 are routine communications that cannot be construed as reprimand or counseling. JA 33, ¶11.  For Ms. Weaver to suggest that these communications

were counseling is inaccurate and misleading. It was not unusual for benefits to lapse, since the residents were mentally disabled individuals who could not assist Ms. Mercer with paperwork. JA 33, ¶11. Ms. Mercer needed counselors and program managers to provide her with social security cards, bank statements and paystubs before she could apply for Food Stamps for each resident. JA 33, ¶11. Getting this information from each individual to Ms. Mercer was time consuming and sometimes impossible. JA 33, ¶11. This was an expected incident to Ms. Mercer's position as Finance and Benefits Coordinator, and this was always known by Ms. Mercer's supervisor, Penny Green. JA 33, ¶11.

On March 23, 2011, Plaintiff was terminated by letter before she ever returned from FMLA leave. JA 7, ¶12. At this time, she was told by her supervisor, Ms. Green, that she was being terminated due to unsatisfactory work performance and nothing more. JA 7, ¶12. Ms. Green did not give her any detail as to how her job performance was unsatisfactory. JA 7, ¶12. Ms. Mercer was not disciplined or counseled in any way, before or after she went out on FMLA leave, for any of the allegations made against her. JA32-33, ¶¶5, 7. Despite never having any performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15.

Ms. Mercer visited work while she was on FMLA leave on February 22, 2011. JA 34, ¶19; JA 6, ¶9. Ms. Mercer found that her office door was locked, the locks had been changed and someone else had taken over her office. JA 6, ¶9. Ms. Green was on vacation at the time Ms. Mercer returned on February 22, 2011. JA 34, ¶19; JA 6, ¶9. When Ms. Green learned that Ms. Mercer had returned from FMLA leave, she immediately returned from vacation, rushed into the office and placed Ms. Mercer on administrative leave on the same day. JA 34, ¶19; JA 6, ¶9. The administrative leave letter that was given to Ms. Mercer does not explain (1) how her job performance was unsatisfactory; (2) what is meant by "incomplete paperwork" and (3) does not mention any unopened mail. JA 28; JA 34, ¶19. The letter stated only that she was being placed on administrative leave "due to unsatisfactory job performance and incomplete paperwork." JA 34, ¶19; JA 6, ¶10.

Ms. Green later shifted her reasons for terminating Ms. Mercer during Ms. Mercer's unemployment appeal, at which time The Arc alleged for the first time that there was unopened mail and therefore that Ms. Mercer was not entitled to unemployment benefits because she had been fired for "misconduct." JA 34, ¶18; JA 6, ¶11. Ms. Mercer was never told anything about unopened mail at the time she was placed on administrative leave or at the time she was terminated. JA 34, ¶18. In all of the years that Plaintiff worked for Defendant, she never had any issue with any unopened mail. JA 6, ¶11. The alleged "unopened mail" was never

presented to Ms. Mercer. JA 6, ¶11. None of the alleged unopened mail was unopened at the time it was presented to Plaintiff for the first time two (2) months later. JA 6, ¶11. Ms. Mercer denies failing to open mail. JA 34, ¶16. Ms. Mercer has never been shown any unopened envelopes. JA 34, ¶16.

There has been absolutely no evidence presented to Ms. Mercer that she did not open mail or that her performance was unsatisfactory. JA32-33, ¶¶4-7. Ms. Mercer denies all allegations of misconduct, unopened mail and unsatisfactory performance which were made against her while she was on FMLA leave. JA 32-34, ¶¶16-17, 4-6. Ms. Mercer denies that Ms. Weaver or anyone else counseled her in restoring benefits to eligible residents before she went on FMLA leave. JA 33, ¶7.

Terminating Ms. Mercer's employment prior to any type of written reprimand is a violation of the employee handbook, which provides for stepped discipline. JA 34, ¶20. Nobody ever explained to Ms. Mercer what was meant by "unsatisfactory job performance" and she was never presented with anything which would justify her termination. JA 34, ¶19.

While Plaintiff was temporarily out of the office on FMLA leave, she was replaced by a coworker. JA 7, ¶15 and JA 34, ¶22. Despite never having any performance issues, Penny Green manufactured complaints about Plaintiff's job performance, since Plaintiff had already been replaced by a co-worker, and in violation of the FMLA. JA 7, ¶15.

None of the above evidence, which the lower court is required to accept as true, was considered by the lower court in dismissing Ms. Mercer's FMLA retaliation claim. The myriad evidence above is more than enough to pass muster at the motion to dismiss stage – Ms. Mercer should be entitled to conduct discovery and test the veracity of Ms. Weaver's and Ms. Green's statements on cross examination.

### C.    Plaintiff Met Her *Prima Facie* Burden

"FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F. 3d 541, 551 (4th Cir. 2006). "Thus, to succeed on his retaliation claim, [the Plaintiff] must first make a *prima facie* showing 'that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998). "If he 'puts forth sufficient evidence to establish a prima facie case of retaliation' and [the Defendant] offers a non-discriminatory explanation' for his termination, [the Plaintiff] 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" *Nichols v. Ashland Hosp. Corp.*,251 F.3d 496, 502 (4th Cir.2001).

Ms. Mercer has provided sufficient information in the pleadings, exhibits, including her affidavit, to create a *prima facie* case of Retaliation for taking FMLA leave which is sufficient to overcome Summary Judgment. Accepting all allegations in the Complaint as true, Ms. Mercer has set out a *prima facie* case of retaliation for utilizing her FMLA rights. JA 5-7. The retaliation (or discrimination) provision of the FMLA, 29 U.S.C.A. § 2615(a)(2), states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Within her Complaint, Ms. Mercer has stated that she took FMLA leave, that she was entitled to take FMLA leave and that The Arc was an eligible employer. JA 5, ¶¶3-4. Plaintiff stated that she performed well in her job since 2004 and received positive performance evaluations. JA 5-6, ¶¶6-7. She took FMLA leave because of injuries from an automobile accident in January 2011, and she complied with the requirements to take FMLA leave. JA 6, ¶8. Ms. Mercer returned to work and found her office door was locked, someone had taken over her office and she was placed on administrative leave the same day for unsatisfactory job performance and incomplete paperwork. JA 6, ¶¶9-10, 15. When Ms. Mercer returned from recovering from her injuries, she was immediately placed on of administrative leave and terminated. JA 6-7, ¶¶11-12. Ms. Mercer was never given any reasons for her termination when she was

terminated. JA 6-7, ¶¶11-12.  Ms. Mercer was never given a verbal or written

reprimand, in violation of the employee handbook, which provides for stepped

discipline. JA 7, ¶¶14.  Ms. Mercer was first told of the allegation that she had

unopened mail two (2) months after her termination, but was never shown any

unopened mail at any time. JA 6, ¶11.  These, and other allegations from The Arc,

are pretextual and retaliate against her for exercising her FMLA rights, as

contemplated by FMLA, 29 U.S.C. §2615(a)(2) and 29 U.S.C. §2614. JA 6-8,

¶¶10-11, 15, 19-23.  Ms. Mercer used FMLA leave and her employer terminated

her on the same day that she returned from leave for alleged behavior that was

allegedly discovered while she was on FMLA leave.  JA 5-6, ¶¶6-10.  The

employer's stated reasons for terminating her were for unsatisfactory performance

and incomplete paperwork, where Ms. Mercer's performance was in fact

satisfactory and she did complete her paperwork.  JA 6-7, ¶¶11-13.  Later, her

employer stated that the reason was only for unsatisfactory performance, but did

still not provide Ms. Mercer of any examples of how it was unsatisfactory.  JA 7,

¶12.  Ms. Mercer's employer shifted its reasons for terminating her Ms. Mercer

during Ms. Mercer's unemployment appeal, at which time The Arc alleged for the

first time that there was unopened mail and therefore that Ms. Mercer was not

entitled to unemployment benefits because she had been fired for "misconduct." JA

34, ¶18; JA 6, ¶11.  Ms. Mercer denies failing to open mail. JA 34, ¶16.  Ms.

47

Mercer denies all of the performance-related allegations against her and maintains that the employer's stated reasons for terminating her are a pretext for retaliation for taking protected FMLA leave.  JA 7-8, ¶¶15, 19-23.

### D. The Closeness in Time Between the FMLA Leave and Plaintiff's Termination Establishes a *Prima Facie* Case

It is also worth noting that Ms. Mercer was terminated while she was on FMLA leave, for alleged misconduct which occurred while she was on FMLA leave.  While evidence as to the closeness in time "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.' *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).  Hence, Yashenko has made a *prima facie* showing of retaliation." *Yashenko* at 551.  The closeness in time, combined with The Arc's lack of substantive evidence to support its allegations, is more than enough to make out a *prima facie* case of retaliation, and presents a host of disputed issues of material fact.

Ms. Mercer is entitled to the presumption of causality given that the time period of her protected activity was the same time period that Defendant decided to terminate her.  "To qualify as a causal connection... the temporal proximity between the employer's knowledge of the protected activity and the adverse action must be 'very close.'" *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001).  A close temporal proximity with the protected activity and

the alleged retaliatory action may be sufficient to establish a causal connection. *See Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000). While evidence as to the closeness in time "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.' *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989). Hence, [the employee] has made a *prima facie* showing of retaliation." *Yashenko* at 551. The closeness in time (there was no lapse of time between Ms. Mercer taking FMLA leave and her termination—they happened at the same time) and facts suggesting pretext, combined with The Arc's lack of substantive evidence to support its allegations, is more than enough to make out a *prima facie* case of retaliation to survive a motion to dismiss before Ms. Mercer has had any chance to conduct any discovery.

## IV. The District Court Erred in Dismissing Both FMLA Counts in the Complaint Because Ms. Mercer's Allegations are Plausible

### A. The Lower Court Erred When it Did Not Accept Plaintiff's Evidence as True and Instead and Accepted Statements from Defendant's Witness As True

Rule 12(b)(6) requires that the court to "accept as true all of the factual allegations contained in the complaint." *Gerner v. County of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (citing *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.2011)). The Court also "must view the Complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th

Cir. 2001). "When construed in the light most favorable to Ms. Mercer, the factual averments in her Complaint allow a court to draw a reasonable inference that Defendant interfered with Ms. Mercer's FMLA rights and that she was terminated as retaliation for exercising her protected rights under the FMLA. Instead of accepting Ms. Mercer's statements and pleading as true, the lower court accepted the statements of Defendant's human resources director as true and disregarded all evidence provided by the Plaintiff. JA 46-48.

Since Defendant's averments about the non-discriminatory and non-interference reason for Plaintiff's termination comes from someone possessing a personal, professional and financial interest in avoiding liability for discrimination, the weight given to that affidavit evidence should be determined by a jury. Courts have in a variety of analogous contexts recognized that a person's testimony about the good faith of her own motives is not a particularly reliable form of evidence, and is insufficient grounds for granting summary judgment. *See e.g., Dyer v. Cmty. Mem. Hosp.*, 2006 WL 435721 at *11 (E.D. Mich. 2006) ("[S]elf-serving statement by the defendant's representative that no illegal discrimination animated the defendant's actions is insufficient to put the plaintiffs to their proofs at the summary judgment stage of the proceedings."); and *Lust v. Sealy, Inc.*, 383 F.3d 580, 582-83 (7th Cir. 2004) ("Sealy's contention that 'the jury cannot be permitted to simply choose to disbelieve the evidence offered by Sealy' is a misleading

halftruth. It is true that a plaintiff cannot prevail without offering any evidence of his own, simply by parading the defendant's witnesses before the jury and asking it to disbelieve them. That would be 'a no-evidence case, and [in] such a case a plaintiff must lose, because he has the burden of proof.' . . . But if the plaintiff offers evidence of her own, as she did here, the jury is free to disbelieve the defendant's contrary evidence. There is no presumption that witnesses are truthful.") (citations omitted).

The Supreme Court declared in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000), that in considering a Rule 50 motion for judgment as a matter of law, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." In *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 436 (4th Cir. 2001), this Court applied this holding in *Reeves* to Rule 56 motions for summary judgment: "Although we should review the record as a whole, we must disregard all evidence favorable to the moving party, here, the Angelos Firm, that a jury would not be required to believe. *Id.* at 151." The jury was not required to believe Defendant's human resources director's statements as true, yet the lower court accepted these statements as facts while not considering the evidence and statements provided by the Plaintiff. JA 46-48.

### B.      Ms. Mercer Only Needs to Show that Her Claims Are Plausible

Ms. Mercer must only show that her claims are plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)*; Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[5]  Ms. Mercer is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-12 (2002).  The factual allegations in the record need only be enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. At 556; *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012).  *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011), cited *Swierkiewicz* for the proposition that the question was not whether Skinner would ultimately prevail, "but whether his complaint was sufficient to cross the federal court's threshold." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  *Skinner* added: "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." 131 S. Ct. at 1296.  It is plausible that her performance was not deficient, and that Defendant's stated reasons for terminating her are a pretext. *See* Sections (II)(B) and (II)(C) of this motion.

---

5      The lower court does not appear to have decided the instant motion to dismiss using the proper standard, as it failed to cite *Iqbal* or *Twombly* in its opinion and similarly does not test the Complaint using the standard of "plausible." JA 41-49.

Ms. Mercer has shown that there is a plausible basis underlying her claims. She so alleged in the Complaint and in her affidavit and exhibits. JA 10-19, ¶¶ 19-29, 42-96; JA 32-40.  That is sufficient for Rule 12(b)(6).  The bar is set low under 12(b)(6); a well-pleaded complaint may proceed even if the court believes that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Twombly*, 550 U.S. at 556; *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009).

Ms. Mercer presented evidence that raised beyond a level of speculation the likelihood that the employer's stated reasons for terminating Ms. Mercer was a pretext for FMLA interference and retaliation.  *See* Sections (II)(B) and (II)(C) of this motion.

Under the applicable standards, the lower court should have found it plausible, and should have found that a reasonable jury could draw the inference, that Ms. Mercer's supervisor terminated her because of her FMLA leave and not because of her allegedly deficient performance.  Instead, it accepted as true the created-for-litigation summary-judgment statements of Defendant's human resources director, whom Ms. Mercer has not had the opportunity to depose. This was error; if the tactic is accepted, few if any FMLA cases could survive a combination motion like that herein.

The District Court was required to, but did not, view in the light most favorable to Mercer the evidence outlined above that Ms. Mercer was not performing satisfactorily and that Defendant's stated reasons for terminating her while she was recovering from her injuries on FMLA leave were pretext.

## V.     The District Court Erred When It Dismissed Ms. Mercer's Complaint Before She Had the Opportunity to Conduct Any Discovery

The lower court dismissed this action before Ms. Mercer had the opportunity to conduct any discovery.  Ms. Mercer has not even had to opportunity to cross examine Defendant's human resources director, the only witness that Defendant relies on in support of its motion.  At this preliminary stage of the proceedings, a Complaint simply must call for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim.  In *Love v. Smith*, the Court denied defendant's motion to dismiss, ruling that plaintiff's claims should proceed with discovery. 2005 U.S. Dist. LEXIS 9480, 21-22 (D. Md. 2005).  The Court stated that "[a]lthough additional discovery may very well reveal that Love was legitimately demoted, albeit in a clumsy manner, for her failure to adequately ensure the safety of the public bus system, it would be premature to resolve this factual contest at the pleading stage given that Love has alleged facts that, if true, could support a claim for relief under Title VII." Id. at 18.  It further stated that "[t]he above alleged facts, if true, could support a claim for sex discrimination and retaliation in violation of Title VII. The defendants, therefore, are not entitled to

dismissal and this case should proceed with discovery." Id. at 19.  Ms. Mercer

plead sufficient facts in her Complaint for her claims under the FMLA.  Therefore,

this case should proceed to discovery.

In *Yoon*, the Court denied defendant's motion to dismiss, or alternatively, for

summary judgment and allowed plaintiff to conduct discovery to investigate

plaintiff's claim of defendant's discriminatory motive. *Yoon v. Sebelius*, 2010 U.S.

Dist. LEXIS 2555 (D. Md. 2010).  The Court noted that "[a] motion to dismiss will

be treated as a motion for summary judgment, 'if matters outside the pleadings are

presented to and not excluded by the court.' Fed. R. Civ. P. 12(d). 'As a general rule

summary judgment is appropriate only after 'adequate time for discovery.'" Id. at

¶8, *citing Evans v. Techns. Application & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.

1996).  Similarly to *Love* and *Yoon*, Ms. Mercer has alleged sufficient facts to

support her claims and Ms. Mercer should be allowed the opportunity to conduct

discovery in order to test the veracity of Ms. Weaver's and Ms. Green's statements

and to investigate all of the facts of this case.

## CONCLUSION

Ms. Mercer's Complaint is sufficient to overcome the very low "plausible"

standard of a motion to dismiss and summary judgment at the pleading stage.  The

lower court erred when it dismissed both Ms. Mercer retaliation and interference

claims under the FMLA.  The lower court accepted affidavit evidence that was

created specifically for this litigation by Defendant's human resources director with no personal knowledge of the facts in this case as true, while at the same time disregarding all of Ms. Mercer's evidence that Defendant's stated reasons for her termination were pretext.  Ms. Mercer was a long time employee of The Arc of Prince Georges County who was terminated when she exercised her rights under the FMLA to recover from very serious injuries as a result of a car accident. Defendant's stated reason for terminating her was that her performance was deficient, where the evidence shows that Ms. Mercer always had positive performance reviews and was never reprimanded or cited for poor performance in all of her years working for the employer.  The lower court is required to grant all reasonable inferences to Ms. Mercer, which it did not do.  For these reasons, the lower court's decision should be reversed and remanded and Defendant should be Ordered to answer Ms. Mercer's Complaint.

## **REQUEST FOR ORAL ARGUMENT**

Ms. Mercer respectfully requests that this appeal be heard at oral argument.

/s/ Kevin M. Plessner
Kevin M. Plessner
Law Office of Kevin M. Plessner
228 Homewood Rd.
Linthicum, MD 21090
(267) 340-7024
Federal Bar No. 18225
*Attorney for Plaintiff, Adesina Mercer*

56

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      this brief contains <u>13,806</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

/s/ Kevin M. Plessner
Kevin M. Plessner

*Counsel for Appellant*

Dated: April 30, 2013

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 30, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> John S. Vander Woude
> ECCLESTON & WOLF PC
> Baltimore Washington Law Center
> 7240 Parkway Drive, 4th Floor Hanover, MD 21076
> (410) 752-7474
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Melissa A. Dockery
> Melissa A. Dockery
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA 23219