RECORD NO. 13-1300

In The

# United States Court of Appeals
### For The Fourth Circuit

## ADESINA A. MERCER,

*Plaintiff – Appellant*,

**v.**

## THE ARC OF PRINCE GEORGES COUNTY, INC.,

*Defendant – Appellee*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

———————————

**BRIEF OF APPELLEE**

———————————

**John S. Vander Woude
Eric M. Rigatuso
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
(410) 752-7474**

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1300__    Caption: __Adesina A. Mercer v. The ARC of Prince George's County, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

The ARC of Prince George's County, Inc.
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
    If yes, identify entity and nature of interest:

    Philadelphia Insurance Companies.  Liability insurer.

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                        ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ John S. Vander Woude                    Date:        3-12-13

Counsel for: Appellee

# CERTIFICATE OF SERVICE
*****************************

I certify that on ____March 12, 2013____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Kevin M. Plessner, Esquire
Law Office of Kevin M. Plessner
228 Homewood Road
Linthicum, MD  21090

____/s/ John S. Vander Woude____                    _____3-12-13_____
(signature)                                              (date)

07/19/2012                        - 2 -
SCC

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF ISSUES ......................................................................1

STATEMENT OF THE CASE...................................................................1

STATEMENT OF FACTS .........................................................................2

SUMMARY OF ARGUMENT ..................................................................6

ARGUMENT ...........................................................................................7

      Standard of Review................................................................................7

         1.    The District Court Correctly Ruled that Appellant was not Entitled to Reinstatement and thus, her FMLA Interference Claim Failed ...........................................................9

         2.    Appellant Failed to Satisfy her Burden to Establish that Appellee's Proffered Explanation for her Termination is a Pretext for FMLA Retaliation ................................................21

         3.    The District Court Correctly Disregarded Appellant's Request for Discovery, as Appellant Failed to Satisfy Rule 56(f) ................................................................................31

CONCLUSION .......................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................8

*Baldwin v. England*,
137 Fed. Appx. 561 (4th Cir. 2005) ............................................29

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
346 F.3d 514 (4th Cir. 2003) ..................................................9, 16

*Burgess v. JHM Motels, LLC*,
2010 U.S. Dist. LEXIS 4299 (D.S.C. 2010)................................23

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................8

*Cohen v. Duracell Int'l USA*,
2 Fed. Appx. 373 (4th Cir. 2001) ................................................8

*Daugherty v. Wabash Center, Inc.*,
577 F.3d 747 (7th Cir. 2009) ....................................10, 11, 12, 14

*EEOC v. Delta Chemical Corp.*,
2008 U.S. Dist LEXIS 91480 (D. Md. 2008)...............................28

*Evans v. Techns. Application and Serv. Co.*,
80 F.3d 954 (4th Cir. 1996) ...........................................31, 32, 33

*Furlow v. Donahoe*,
2013 U.S. Dist. LEXIS 20758 (M.D.N.C. 20013) .......................29

*Hawkins v. Pepsico, Inc.*,
203 F.3d 274 (4th Cir. 2000) .....................................................25

*Hodgens v. General Dynamics Corp.*,
144 F.3d 151 (1st Cir. 1998)...........................................................................10

*Kohls v. Beverly Enters. Wis. Inc.*,
259 F.3d 799 (7th Cir. 2001) ........................................................................12

*Laing v. Federal Express Corp.*,
703 F.3d 713 (4th Cir. 2013) ...............................................................*passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................8

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...........................................................................22, 23, 24

*Nichols v. Ashland Hosp. Corp.*,
251 F.3d 496 (4th Cir. 2001) ........................................................................25

*Paddington Partners v. Bouchard*,
35 F.3d 1132 (2d Cir. 1994) ........................................................................33

*Peters v. Jenney*,
327 F.3d 307 (4th Cir. 2003) ..........................................................................8

*Rowe v. Marley Co.*,
233 F.3d 825 (4th Cir. 2000) ........................................................................19

*Simpson v. Office of Chief Judge of Circuit Court of Will County*,
559 F.3d 706 (7th Cir. 2009) ........................................................................22

*Stewart v. Henderson*,
207 F.3d 374 (7th Cir. 2000) ........................................................................23

*Thompson v. CDL Partners, LLC*,
378 Fed. Appx. 288 (4th Cir. 2010) .............................................................32

*Warch v. Ohio Cas. Ins. Co.*,
435 F.3d 510 (4th Cir. 2006) ........................................................................22

*Yashenko v. Harrah's N. C. Casino Co.*,
    446 F.3d 541 (4th Cir. 2006) ...............................................................9, 10, 22

## **STATUTES**

29 U.S.C. §§ 2601 *et seq.*.....................................................................*passim*

29 U.S.C. § 2614(a)(3)(B) .................................................................................10

Md. Code. Ann., Labor and Empl., §§ 8-1002–1003 .............................................30

## **RULES**

Fed. R. Civ. P. 12(b)(6)...................................................................................7, 31

Fed. R. Civ. P. 56 ................................................................................................8

Fed. R. Civ. P. 56(a)...........................................................................................8

Fed. R. Civ. P. 56(f) .....................................................................................*passim*

## **REGULATION**

29 C.F.R. § 825.216 ....................................................................................10, 12

## STATEMENT OF ISSUES

1. Whether the District Court correctly ruled Appellant was not entitled to reinstatement under the Family and Medical Leave Act ("FMLA").

2. Whether Appellant failed to satisfy her burden to establish that Appellant's proffered explanation for her termination was pretext for FMLA retaliation.

3. Whether the Appellant's failure to file a Rule 56(f) affidavit prohibits her assertion that she was entitled to discovery.

## STATEMENT OF THE CASE

Appellant Adesina A. Mercer filed a Complaint under the Family Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA") in the U.S. District Court for the District of Maryland on about January 31, 2012. Appellant's Complaint included two (2) Counts: (1) Violation of the FMLA; and (2) Retaliatory Discharge in Violation of a Clear Mandate of State Public Policy. Count I, Violation of the FMLA, is at issue on this appeal.

Appellee, the ARC of Prince George's County, Inc., filed a Motion to Dismiss, or in the Alternative, for Summary Judgment with regard to all Counts. The Motion was supported by a Memorandum, Affidavit, and several Exhibits.

Appellant voluntarily dismissed Count II, Retaliatory Discharge in Violation of a Clear Mandate of State Public Policy, as being duplicative of Count I and based on violation of the Federal statute.

Appellant filed a timely Opposition to Appellee's Motion, and attached to it, a supporting Memorandum, an Affidavit of Appellant, and exhibits.

Appellee filed a timely Reply to the Opposition.

The District Court issued a Memorandum Opinion and Order granting Appellee's Motion for Summary Judgment on February 5, 2013.

Appellant filed a timely Notice of Appeal from the Final Judgment on March 6, 2013.

## STATEMENT OF FACTS

The Appellee is an organization engaged in the activity of providing programs and services to individuals with disabilities.  JA5.  Appellee offers support, understanding, and opportunities for people with developmental disabilities and their families.  JA15.  Among these services, Appellee provides service to individuals that reside in residential facilities and houses operated by Appellee.  JA15.

Appellee employed Appellant in 2004 as a full-time Finance and Benefits Coordinator.  JA5-6.  The responsibilities of Appellant's position included applying for and processing initial applications for benefits under the Food Stamp

program and Social Security for individuals in Appellee's residential program ("Residents"). Additionally, Appellant was also responsible for applying for and processing renewals and re-determinations for benefits under these programs. JA15-16, ¶4. Appellant was ultimately responsible for assuring that all Residents received all benefits for which they were eligible, and for completing eligibility verifications for the Residents as required. Appellant acknowledged these responsibilities when hired, when she signed the Finance and Benefit Coordinator Job Description. JA19-20. For many Residents, the benefits received constitute their only source of income. JA15-16, ¶4.

On May 14, 2007, Appellant was placed on conditional employment status due to her poor performance, and inability to adequately manage the time requirements of her position. JA16, JA21. Several eligible residents were not receiving Food Stamp benefits that Appellant was responsible for maintaining. JA16, JA21. She was restored to regular employment status on June 21, 2007. JA16, ¶5.

On April 1, 2009, Appellant was placed on medical leave, effective March 23, 2009, in connection with surgery performed. JA16; JA22, ¶6. During her leave, other employees performed Appellant's tasks, and reviewed the status of filings of applications for benefits under the Food Stamp program. JA16, ¶6. Appellee, at that time, learned that many of its eligible Residents were no longer

- 3 -

receiving Food Stamp benefits. JA16, ¶6. Appellant returned from that medical leave and resumed her duties. Appellee informed Appellant of the loss of benefits, and she was instructed to restore the lost benefits for the Residents. JA16, ¶6.

In late 2010, Appellee again discovered numerous eligible Residents were not receiving their Food Stamp benefits. JA16, ¶7. Appellee informed Appellant of the identity of all such persons not receiving benefits in November 2010, and instructed her, by e-mail, consistent with her duties, to reinstate the benefits for those Residents. JA16, ¶7; JA23-24. On December 28, 2010, Appellant was again informed by e-mail of the Residents who were not receiving their benefits. JA25. These included all of the individuals who were on the November 29, 2010 list, plus an additional five (5) individuals. Compare, JA23-24, JA25.

On January 29, 2011, Appellant was involved in a non work-related automobile collision. JA6. Appellant was unable to work and placed on FMLA leave on January 31, 2011. JA6.

During Appellant's absence, other employees again assumed her duties. JA16-17 ¶8. During her absence, Appellee discovered dozens of unopened envelope packets in Appellant's office, dating back as far as May 2010, relating to Food stamp and Social Security benefit status and/or redeterminations. JA16, ¶8. As part of her job's responsibilities, Appellant was required to process and respond to such materials and to ensure the continued flow of benefits for eligible Residents

of Appellee's program. JA15 ¶4, JA19-20. Consequently, many Residents who had been receiving Social Security benefits were no longer receiving said benefits, because the re-determinations/renewals for the benefits had not been submitted by Appellant. JA16, ¶8.

On February 21, 2011, Appellant provided Appellee with medical documentation from her physician releasing Appellant medically, and stating that Appellant could resume usual work duties on February 22, 2011. JA26. Appellant then returned from her FMLA leave on February 22, 2011, per her physician's clearance. Based on the information discovered while she was out on leave concerning the unopened redeterminations of benefits, Appellant was placed on administrative leave with pay, for "unsatisfactory job performance and incomplete paperwork," on her first day back to work, February 22, 2011, a five (5) day process, so an investigation could be conducted. JA17, ¶¶9-10; JA28. At the end of the 5-day leave period on February 28, 2011, Appellant provided medical documentation indicating that she once again needed to go out on medical leave, until at least March 14, when she was to be re-evaluated. JA17, ¶10; JA29.

During its further investigation Appellee learned that of the 160 eligible Residents, only 61 were on line and receiving Food Stamp benefits. 99 eligible recipients were not receiving their benefits due to lack of submission of re-

determination/renewal materials. JA17, ¶¶10-11. Moreover, 25 Residents were not receiving Social Security benefits for which they were eligible. JA17, ¶10.

After being once again cleared by her physician, Appellant returned to work in late March 2011. Based upon the findings of Appellee's investigation regarding the lapse in Food Stamps and/or Social Security benefits for many Residents, Appellee, on March 23, 2011, terminated Appellant from her employment for unsatisfactory job performance. JA17, ¶11; JA31.

## SUMMARY OF ARGUMENT

The District Court's judgment was plainly correct. The District Court's Order of February 5, 2013 should be affirmed because there is no disputed material fact and Appellee is entitled to Judgment as a matter of law with regard to Appellant's FMLA interference claim. Appellant was not entitled to reinstatement, as her termination would have occurred regardless of her leave. Additionally, the District Court properly entered summary judgment with regard to Appellant's retaliation claim, because Appellant, in response to Appellee's legitimate non-discriminatory justification proffered for Appellant's termination, failed to satisfy her burden in generating a dispute of material fact sufficient to present the issue of pretext. The District Court was correct in holding that no reasonable fact-finder could find falsity with the Appellee's proffered legitimate basis for termination; Appellant does not dispute the material facts relied upon by the Appellee and the

District Court in granting summary judgment; and Appellee's explanations regarding the termination have been consistent since the time Appellant was terminated.  Lastly, the Appellant was not entitled to defeat the summary judgment motion by alleging discovery was necessary, because Appellant failed to submit the necessary Affidavit in accordance with Rule 56(f), and may not now seek to reverse the District Court's decision on that basis.

## ARGUMENT

### Standard of Review

The District Court decided Appellee's Motion under the summary judgment standard.   JA44.   The Court noted that although Appellee's motion was denominated as an Alternative Motion to Dismiss or Summary Judgment, the parties on both sides submitted and relied on materials outside the pleadings. JA44.  Therefore, the summary judgment standard applied.

Appellant's Brief spends considerable energy addressing issues relating to sufficiency of pleadings, and whether or not a *prime facie* case had been alleged in the Complaint.  Moreover, there are numerous references in Appellant's Brief to Rule 12(b)(6) as the appropriate standard.  None of those issues or arguments are properly before the Court.  Because the District Court did not address the motion as a motion to dismiss, any and all arguments relating to Rule 12(b)(6), or to sufficiency of pleadings and/or the allegations in the Complaint, are not properly

under review by this Court. The District Court's decision was that of summary judgment, pursuant to Rule 56. As a result, the cases and law setting forth the standard for review of the grant of summary judgment are to be utilized by this Court in its review of the trial court's decision.

Summary judgment may be entered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). JA 44.

One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Cohen v. Duracell Int'l USA*, 2 Fed. Appx. 373, 375 (4th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party has met its burden, then the non-moving party must come forward with specific facts showing that there is a genuine issue for trial in order to defeat the summary judgment motion. *Id.* at 375 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). As the District Court properly noted, "a mere scintilla of proof . . . will not suffice to prevent summary judgment." JA44 (quoting *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003)). If evidence is merely colorable, or is not significantly probative, summary judgment may be granted. JA45. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

At the summary judgment stage, when the moving party has met its burden, it is incumbent upon the non-moving party to present sufficient and specific evidence to permit the case to proceed.  A party opposing a properly supported Motion for Summary Judgment may not rest upon the mere allegations or denials of pleadings, but rather, must set forth specific facts showing that there is a genuine issue for trial.  JA44.  (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)).  It is in this regard that Appellant's position fails, as Appellant did not, at the district court level, provide the necessary specific facts and evidence to generate a dispute of material fact to create a triable issue.

**1.    The District Court Correctly Ruled that Appellant was not Entitled to Reinstatement and thus, her FMLA Interference Claim Failed**

The FMLA provides covered employees with two types of rights and protections.  Covered employees are entitled to a total of 12 work weeks of leave during a 12-month period for family and health related matters, and have a right to be restored by the employer to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  *Yashenko v. Harrah's NC Casino Company*, 446 F.3d 541, 546 (4th Cir. 2006).  The FMLA also contains provisions that protect employees from retaliation for

exercising their substantive rights under the FMLA. *Id.*, at 546 (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-160 (1st Cir. 1998)).

However, while the FMLA provides for the restoration of employment cited above, a covered employee is not entitled to any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave. *Id.*, at 546 (citing 29 U.S.C. § 2614(a)(3)(B)). As the *Yashenko* case made clear, the Fourth Circuit joined every other Circuit Court of Appeals to consider the scope of the right to restoration and held as follows:

> We join our sister circuits in concluding that the FMLA does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave.... The Secretary of Labor has promulgated a regulation – 29 C.F.R. §825.216 (2005) – clearly resolving the question.

*Yashenko*, at 547.

Analysis of the case of *Daugherty v. Wabash Center, Inc.*, 577 F.3d 747 (7th Cir. 2009), a case with strikingly similar facts to the current matter, and applying the specific regulation quoted in *Yashenko*, is especially noteworthy. In *Daugherty*, summary judgment was entered on behalf of the Appellee employer in connection with the employee's FMLA claims. In *Daugherty*, the Appellant began working for Wabash, the Appellee, a not-for-profit agency serving adults and children with developmental disabilities (an organization coincidentally very

- 10 -

similar to the Appellee in this case). *Daugherty*, 577 F.3d at 748. Despite earlier good or excellent performance reviews, the Appellant began having work-related troubles several years into his employment. This included, but was not limited to, being involved in "e-mail wars" with other employees, complaints about his management approach, unauthorized credit card use, violation of company purchasing protocols, and poor IT practices. *Daugherty*, at 749-750.

As a result of Daugherty's employment deficiencies, a meeting was held, whereby he was informed of some of these issues, and an indication that a corrective action plan would be developed to address them. Before the corrective action plan details were discussed, Plaintiff Daugherty requested leave from the employer under the FMLA. *Daugherty* at 749. The leave was granted. During his absence, the employer uncovered additional troubling information about Daugherty's work performance. *Id.* Due to the discovered deficiencies, the employer presented a new corrective action plan to Daugherty on the day he returned to work. *Id.* Daugherty refused to accept the corrective action plan, and presented a new order form from his doctor for continued medical leave, which the employer granted. *Id.* While Plaintiff Daugherty was out on continued medical leave, the employer discovered additional problems with Daugherty's work performance. Consequently, several weeks later, and before Daugherty returned from his FMLA leave, the employer, citing several deficiencies in his work

- 11 -

discovered while he was on leave, terminated Daugherty's employment. *Id.* at 750.

Daugherty asserted that the employer violated the FMLA by failing to reinstate him. Daugherty asserted that even if an employer discovers a reason to fire an employee during FMLA leave, the employer must reinstate the employee before then firing him. *Id.*, at 750. The court rejected this contention. The court noted that the right to restoration is not unlimited. Relying upon the statute and corresponding regulation (29 C.F.R. § 825.216), the court held that an employee is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave. The court concluded that an employer may terminate employees, even when on leave, if the employer discovers misconduct that would justify termination had leave not been taken. "The fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee." *Daugherty*, at 750 (quoting *Kohls v. Beverly Enters. Wis. Inc.*, 259 F.3d 799, 806 (7th Cir. 2001)). Because the employer presented undisputed evidence that Daugherty had failed to perform the necessary requirements of the position, there was no dispute of material fact. Even if he had never taken leave, he was not entitled to maintain his job. *Id.* at 751.

The same rationale is applicable in the present case. The Appellant, while having had adequate performance reviews earlier in her tenure with the Appellee, had been cited for prior deficient work performance. This is made evident by her being placed on conditional employment status in 2007, a disciplinary measure. Other deficiencies in her performance were identified while out on a prior FMLA leave in 2009, as well as additional deficiencies regarding maintaining benefits again occurred in late 2010.

While Appellant was out on her approved medical leave pursuant to the FMLA in 2011, Appellee discovered a gross deviation from the expected performance of the Appellant in her assigned tasks. As the Benefits Coordinator, the Appellant was responsible for receiving and processing applications and submissions to obtain, and maintain benefits for the Residents. During the Appellant's absence, the Appellee discovered that many eligible Residents had stopped receiving benefits. Of the 160 eligible Residents for Food Stamp benefits, only 61 were receiving them as of February 2011. Appellant had failed to obtain or maintain benefits for 99 eligible recipients, a fact that was uncovered by an investigation prompted by the discovery of dozens of unopened envelopes in Appellant's office relating to submissions for re-determinations of benefits. Appellant also failed to assure all eligible Residents received Social Security benefits, as 25 eligible Residents had fallen off-line.

- 13 -

Based upon this information, and coupled with the Appellant's prior employment difficulties, the Appellee reached the decision to terminate Appellant's employment. This decision was communicated to Appellant on March 23, 2011, after she returned from supplemental FMLA leave.

While it is certainly true that the most recent deficient performance, which served as the basis for Appellant's termination, became known to the Appellee during Appellant's medical leave, it cannot be said that the basis for her termination was her medical leave. Rather, as a necessary byproduct of Appellant being out on leave, other employees were required to step in and perform her duties.[1] Only upon others reviewing Appellant's prior performance, so as to be able to proceed with those tasks, did the employer become aware of the gross deviation from the expected performance of job duties by Appellant. As the *Daugherty* case states, the fact that the medical leave permits the employer to discover the problems caused by the employee cannot serve logically as a bar to the employer's ability to discharge the deficient employee. Consequently, the Appellee was completely within its rights to terminate the Appellant for deficient performance, and her termination was not in any way related to her medical leave. Because she did not have the right to further employment, she did not have the

---

[1] This is also consistent with the reference in the Administrative Leave Letter (which occurred prior to the termination) of unsatisfactory job performance and incomplete work. JA28.

right to be restored to any employment, pursuant to the FMLA. The statute only entitles employees to the same position or benefit they would have otherwise been entitled to. The Appellant may not receive greater protection from termination for poor performance by taking medical leave. Thus, any claim for interference or that she was entitled to restoration necessarily fails.

The District Court properly noted that there is no genuine dispute regarding Appellant's entitlement to be reinstated; as even if she had never taken FMLA leave, she would not have been entitled to keep her job. JA47-48.

Appellant asserts in her Brief that the District Court did not consider Appellant's evidence in arriving at this decision. Appellant Brief at 13-14. This position, however, is contrary to the record. The District Court specifically references Appellant's Affidavit in its recitation of the relevant facts in its decision. JA43. Moreover, in connection with the Analysis section, the District Court again makes specific reference to the Appellant's assertions from her affidavit. JA45.

The reality is that the information contained in Appellant's Affidavit, and which is echoed throughout the Appellant's Brief to this Court, does not dispute any of the specific and supported facts and documents relied upon by the Appellee in its Motion, and upon which the District Court's decision was ultimately based. Therefore, while the Appellant in her Brief refers to numerous allegations in an attempt to create a dispute as to whether or not she performed her duties well, none

- 15 -

of these allegations serve to undermine or refute any of the facts upon which the Appellee's Motion for Summary Judgment was based. Other assertions in her Affidavit are mere general conclusory statements which did not serve to create disputed material facts, or were general denials, which do not serve to refute specific facts set forth in a proper motion for summary judgment. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Appellant asserts that there is a dispute as to whether she performed her duties well; alleges that her workload increased throughout her time; that she never received a negative performance evaluation; that she consistently received satisfactory feedback from her supervisor; that she attended a training class for the purpose of advancing her position with the Appellee; and that there are currently two (2) employees performing the job that she did by herself prior to termination. Appellant's Brief, at pp. 14 through 16.[2] However, these assertions do not dispute Appellee's assertions, and thus do not provide a basis to defeat the motion.

_____

[2] A closer review of many of these factual allegations that Appellant seeks to utilize in order to create a dispute of material fact, reveals that many are not properly before the Court. Many of the factual allegations are derived from the Plaintiff's Complaint. However, as stated above, the District Court decided this matter on a Motion for Summary Judgment. Therefore, mere allegations in Appellant's Complaint do not properly serve to refute factual allegations properly set forth in Appellee's Motion for Summary Judgment. Thus, not only do these allegations fail to properly refute the facts supporting the Appellee's Motion for Summary Judgment, but they were not even properly presented to do so, as they were not set forth in a countervailing Affidavit.

In addition to the allegations regarding the conditions for her work, Appellant merely states several times that she denies the performance-related allegations against her. This, however, is a conclusory allegation, which is not sufficient and does not serve to create a dispute with regard to the facts upon which the motion and District Court decision were based. Notwithstanding the Appellant's conclusory denials, nothing presented by Appellant is sufficient to cast doubt on the veracity of Appellee's legitimate non-discriminatory purpose for Appellant's termination. To illustrate this matter, it is essential to focus on the specific, supported facts presented by the Appellee that the Appellant does not dispute:

- The position of Finance and Benefits Coordinator, as described in the written job description, included the responsibility for applying and processing initial applications for benefits under the Food Stamp Program and Social Security for the program's residents. JA19-20.

- The responsibilities of the Finance and Benefits Coordinator, as set forth in the written job description, included assuring that all those eligible for food stamps receive them on an ongoing basis. JA19-20.

- The responsibilities for the Finance and Benefits Coordinator position, as set forth in the written job description, included assuring all Food Stamp application and recertification requirements were completed in a timely fashion. JA19-20.

- Plaintiff signed the written job description for Finance and Benefits Coordinator when she accepted the position on or about July 26, 2004. JA19-20.

- In May 2007, Plaintiff was disciplined by being placed on conditional employment status due to her poor performance and inability to adequately manage the time requirements of her position. JA21.

- The basis for Plaintiff's discipline in being placed on conditional employment status was Plaintiff's failure to obtain and maintain Food Stamp benefits for the individuals on her case load. JA16, ¶5; JA21.

- During Plaintiff's leave in 2009, many eligible residents were not receiving Food Stamp benefits.[3] JA 16, ¶6.

- In November and December 2010, numerous eligible residents were not receiving benefits, and the Plaintiff received e-mails referencing this fact.[4] JA16, ¶7; JA 23-25.

- At times throughout her employment, Plaintiff by her own admission was unable to obtain and secure benefits for all of the eligible residents.[5] JA33, ¶11.

---

[3] It is noteworthy that the Appellant attempts to re-characterize this fact by asserting that it was "routine" for residents to lapse in receiving Food Stamp benefits, because of the procedure required to keep the benefits current. JA33, ¶¶9-10. Therefore, while attempting to re-characterize the fact that eligible residents were not receiving Food Stamp benefits, the Appellant does not in fact dispute that there were eligible residents who were not receiving benefits.

[4] Again, Appellant attempts to re-characterize the e-mails as "routine communications" that cannot be construed as reprimand or counseling." JA33, ¶11. However, Appellant does not dispute (1) that the eligible residents were not receiving their benefits at that time; or (2) that she was informed of that fact in November and December 2010. Furthermore, to demonstrate the inability of the Appellant in performing her job of obtaining benefits for those eligible residents, it should be noted that the e-mail in November 2010 identified 17 eligible individuals not receiving benefits. A month later, when Appellant received the December 2010 e-mail regarding the same issue, the list included 22 names, the 17 from the previous month, plus 5 more. Therefore, in the one month between the November and December 2010 e-mails, Plaintiff had not reinstated benefits for any of the individuals, and in fact 5 more eligible residents had lost their benefits. JA 23-25.

[5] In various places throughout the Brief, the Appellant acknowledges her inability to maintain benefits for all the residents. On several occasions, she indicated that getting and keeping all of the eligible residents in benefits was "not possible." JA33, ¶¶10-11. Appellant's characterization of impossibility acknowledges her inability to meet the stated requirements in the written job description that she

- 18 -

- While Plaintiff was out on FMLA leave in February 2010, Appellee discovered that 99 of the 160 eligible residents were not receiving their food stamp benefits.[6] JA 17, ¶¶10-11.

A Plaintiff's inability to forecast any evidence that casts doubt upon the veracity of the employer's proffered explanation renders the claim subject to summary judgment. *Rowe v. Marley Co.*, 233 F.3d 825 (4th Cir. 2000). Notwithstanding Appellant's attempts to create disputes, as in the *Rowe* case, Appellant has not presented any evidence from which to infer that the real reason for her termination was illegal discrimination. *Rowe* at 83. Rather, Appellant has made several attempts to re-characterize facts that are not in dispute. However, none of these attempts alter or change the undisputed facts; they clearly

---

signed when she accepted the position. She further attempts to explain this away by indicating that her caseload grew over the time that she was employed. Even if true, this does not demonstrate anything other than inability to perform the job responsibilities. Furthermore, it certainly does not indicate or even infer any discriminatory action by the Appellee.

[6] Appellant's attempt to "dispute" this fact is noteworthy in her Brief. She states that she "denies" that before she went out on FMLA leave, that she failed to obtain and maintain food stamp benefits for the recipients." Appellant Brief, at 4. The Appellant does not dispute, however, that there were eligible residents not receiving benefits. This must also be viewed in connection with the undisputed facts pertaining to the notice e-mails in November and December 2010 relating to eligible residents not receiving benefits; e-mails that Appellant does not dispute receiving (although she attempts to characterize them differently).

- 19 -

demonstrate the legitimate, nondiscriminatory basis for the Appellee's decision to terminate Appellant.

Appellant's own account of the events in her Brief and Affidavit demonstrates an acknowledgement that she was not performing the duties of her position. She attempts to characterize these failures as routine and customary, but nevertheless, she acknowledges she was not performing the responsibilities of the Finance and Benefits Director, as set forth in the written job description she signed in 2004. Examples of Appellant's acknowledgement of such performance deficiencies are as follows:

1.  Her admission that it was routine for Residents' benefits to lapse. JA33, ¶9;

2.  Her assertion that the reason many of the benefits lapsed was blamed on the Residents themselves, as mentally disabled individuals who could not assist Appellant with paperwork. JA33, ¶11.

3.  She could not keep up with the job because her caseload increased from about 90 residents to more than 200 at the time of her termination. JA33, ¶12.

4.  All Residents could not be kept current with benefits because of the shortcomings of the Government DDS employees. JA33-34, ¶15. Keeping all of the residents current in benefits was "time consuming" and sometimes "impossible."

These acknowledgements by the Appellant evidence that she was not fulfilling the responsibilities of the Finance and Benefits Coordinator. Her claims that she fell behind because her caseload increased, or that she had difficulty

performing the responsibilities due to blame placed on the disabled Residents or Government employees, all serve to demonstrate her admitted inability to assure that all Residents were maintained and were receiving the benefits for which they were eligible, a responsibility she acknowledged in signing the job description. It further demonstrates the nondiscriminatory, legitimate purpose of Appellee's decision to terminate her.

Based upon these undisputed facts, the District Court correctly found that the Appellee presented undisputed evidence that Appellant failed to perform her duties satisfactorily. As the District Court noted, Appellant failed to reinstate even one Resident's Food Stamp benefits between November and December 2010, and during her leave, her co-workers discovered that ninety-nine (99) of the Appellee's 160 eligible clients were not receiving Food Stamp benefits that they were due, and twenty-five (25) were not receiving proper Social Security benefits that they were due. Based upon these undisputed facts, Appellant was not entitled to reinstatement, and thus, the District Court properly entered summary judgment in Appellee's favor as to the FMLA interference claim.

**2.     Appellant Failed to Satisfy her Burden to Establish that Appellee's Proffered Explanation for her Termination is a Pretext for FMLA Retaliation**

FMLA retaliation claims are analogous to discrimination claims brought under Title VII. *Laing v. Federal Express Corp.*, 703 F.3d 713, 717 (4th Cir.

2013) (citing *Yashenko v. Harrah's N. C. Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006)). A plaintiff may succeed either by providing direct evidence of discrimination or by satisfying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Direct evidence encompasses "conduct or statements" that both (1) "reflect directly the alleged discriminatory attitude," and (2) "bear directly on the contested employment decision." *Laing* at 717 (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). Appellant makes no allegation or claim of direct evidence retaliation.

Appellant also did not establish any circumstantial evidence to support the indirect method of proving retaliation.[7] The undisputed evidence demonstrated that Appellee terminated Appellant for deficient performance. The termination was the result of Appellee's discovery of Appellant's poor job performance. The court is not a super personnel department that re-examines an employer's decision and reviews it for propriety as to whether it was wise, fair or even correct. *Laing*,

---

[7] Appellant did not plead retaliation by the indirect method, in that there were no allegations in the Complaint or in response to Appellee's motion that Appellant was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, which is a requirement for proceeding under the indirect method. Consequently, Appellant was limited to establishing her case pursuant to the direct method, for which she offered no allegations or evidence. *Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 718 (7th Cir. 2009). Thus, this Court need not even consider any argument under the indirect method.

*supra* at 722; *Burgess v. JHM Motels, LLC*, 2010 U.S. Dist. LEXIS 4299 (D.S.C. 2010) (citing *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000)).

The Supreme Court in the *McDonnell Douglas* case established the evidentiary burden-shifting framework that has become in large measure a judicial playbook for evaluating discrimination claims. *Laing*, *supra* at 719. According to that framework, the initial burden rests on the plaintiff to make out a *prime facie* case of discrimination. If the plaintiff does so, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The plaintiff is then afforded an opportunity to prove that the employer's explanation was, in fact, pretext. *Id.*

The District Court ruled that there was no dispute that the first and second parts of the test were satisfied, but Appellant failed to satisfy the third prong of the test. The court noted that the Appellant "had not satisfied her burden to establish that the ARC's proffered explanation is pretext for FMLA retaliation." JA48.

The Court noted that there is no genuine dispute that Appellant's failures to maintain and reinstate the ARC Residents' Food Stamp and Social Security benefits were the reasons she was terminated. JA48. The District Court relied on *Laing*, *supra*. The Court in that case noted that, in establishing pretext the use of comparator evidence is significant. The Court *Laing* explained that "especially relevant to a showing of pretext would be evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristics) were treated

more favorably." *Laing* at 719 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). As a result, federal courts now routinely rely on comparator evidence when deciding whether an adverse employment action was driven by a discriminatory motive. *Id.* The court noted that comparator evidence is especially useful in discrimination cases for several reasons. The notion of treating two persons differently on the basis of certain characteristics that only one possesses invokes the very notion of discrimination. Such evidence is also sensible for functional reasons, as the test of identifying whether employees are treated more favorably than a person similarly situated to the Plaintiff, but for the characteristic at issue, is a relatively straightforward and manageable inquiry. *Id.* at 719-20. Therefore, adjudicating discrimination claims based on comparator evidence mitigates the risk of judges asserting their own subjective value judgments in place of facts and settled law. *Id.* at 720. While comparator evidence is not the final answer in discrimination law, in cases where an employer adduces a non-discriminatory reason for discharging the plaintiff and comparator evidence does not exist to rebut that explanation, the plaintiff must be able to point persuasively to some other form of evidence demonstrating that the employer's explanation was a mere pretext for discrimination. *Id.* at 720.

There is no dispute that the Appellant did not allege in pleadings or present any comparator evidence in opposing the Motion for Summary Judgment. There

was no admissible evidence before the District Court that any similarly situated employee was treated any differently than the Appellant, but for her exercising her right to take FMLA leave.

It was thus incumbent upon the Appellant to establish through some other means that Appellee's non-discriminatory explanation for her termination, namely her deficient performance and failure to maintain the Residents' Food Stamp and Social Security benefits, was in fact a pretext for FMLA retaliation. *Id.* (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)).

In the *Laing* case, in the absence of comparator evidence, the Plaintiff sought to establish pretext by presenting a "plausible explanation" for each of her improper actions that were the proffered basis for her termination. *Id.* at 721. The Court noted, however, that despite plaintiff's attempt to explain her actions, she misunderstood "the purpose of the pretext inquiry." The Court noted that "when an employer gives a legitimate, non-discriminatory reason for discharging the Plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Id.* at 722 (citing *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)). The Court noted that in attempting to defend the conduct that lead to her termination, the plaintiff merely had proven "the unexceptional fact that she disagrees with the outcome of [her employer's] investigation." *Id.* Such

disagreement, however, does not prove that an employer's decision to terminate her was dishonest or not the real reason for the termination, which is what is required at the third step of the burden-shifting framework. *Id.*

The same analysis is applicable in this matter. The Appellant, throughout much of her Brief (as was the case at the district court level), alleges numerous times she believes that she performed well in her job duties and thus, that her termination was inappropriate. However, an examination of her assertions indicate that they are nothing more than attempts to re-characterize the requirements of her position and the events that took place, in order to provide a plausible explanation for each of her actions that led to her termination. The Appellant sets forth a series of admissions acknowledging that she failed to maintain many of the Residents' Social Security and Food Stamp benefits. According to the Appellant's factual assertions, however, she had an explanation for these failures. Appellant's Brief, relying on Appellant's Affidavit, states as follows:

> "It was not unusual for benefits to lapse, since the residents were mentally disabled individuals who could not assist Ms. Mercer with paperwork. Ms. Mercer needed counselors and program managers to provide her with Social Security cards, bank statements and pay stubs before she could apply for Food Stamps for each resident. Getting this information from each individual to Ms. Mercer was time consuming and sometimes impossible. This was an expected incident to Ms. Mercer's position as Finance and Benefits Coordinator, and this was always known by Ms. Mercer's supervisor,

Penny Green.   (Appellant's Brief, p. 8, JA33, ¶¶9-11. (internal citations omitted)."

As further "explanation," in addition to casting blame for her inability to maintain the benefits on the disabled individuals for whom she was responsible for providing service, Appellant also lays blame at the feet of government personnel involved in the process.  Specifically, Ms. Mercer alleged that she was not the last person who would work with the Food Stamp applications for Residents.  As part of her position, Ms. Mercer would "drop these applications off at the main DSS office and it was up to the DSS employees to have the applications filed." Appellant's Brief, at 4; JA33, ¶15.

Thus, Appellant admits that the facts upon which Appellee's decision to terminate her are not in dispute, and that many of the Residents' benefits had lapsed.   Appellant, however, attempted to characterize these shortcomings as "routine" or "expected."  This, however, is not suggestive of pretext, as it merely serves as an explanation in her view for her poor performance.  It is in this regard no different than the explanation offered in the *Laing* case, which the Court determined is insufficient as a matter of law to create an issue of pretext to overcome a proper summary judgment motion.  As the court in *Laing* stated, she has merely proven the "unexceptional fact that she disagrees" with ARC's findings and decision.  Such disagreement does not prove pretext.  *Id.* at 722.

Appellant's other attempts to establish pretext are equally unavailing. Appellant asserts that a factual dispute of pretext is present because the Appellee provided inconsistent explanations for her termination. Appellant's Brief, at 22. The alleged inconsistent explanations are that, upon her termination, she was provided a letter indicating that she was being terminated "due to unsatisfactory job performance." (Appellant's Brief, at 20 (citing JA 31)). Appellant generally asserts the termination letter does not mention unopened mail or any allegation of misconduct, but that at the time of her subsequent unemployment appeal hearing, Appellee raised the issue of unopened mail and an allegation of misconduct. Appellant's Brief, at 21.

The cases relied upon by Appellant do not support her contention and are inapposite. The present matter does not involve "inconsistent" explanations. Rather, it involves an employer elaborating on the initial explanation, in the course of subsequent proceedings where elaboration was necessary. When an employer does not change its rationale or add a new one, but merely elaborates on what is meant by an initial comment or explanation, there is no evidence of pretext. *EEOC v. Delta Chemical Corp.*, 2008 U.S. Dist LEXIS 91480 (D. Md. 2008). A plaintiff's characterization of an employer's explanations as "evolving rationales" are not reflective of inconsistency when in reality, they merely serve to explain the initial rationale. *Id.* Moreover, different explanations that are not materially

inconsistent are not suggestive of pretext. *Furlow v. Donahoe*, 2013 U.S. Dist. LEXIS 20758 (M.D.N.C. 20013) (citing *Baldwin v. England*, 137 Fed. Appx. 561, 564-65 (4th Cir. 2005)).

The undisputed facts in the present matter demonstrate that there was no inconsistency with regard to any explanation provided by the Appellee for the termination. The initial explanation provided, as set forth in the Termination Letter, was unsatisfactory job performance. This occurred immediately after the investigation and determination that Appellant had substantially and egregiously failed in her duties to maintain the Residents' Food Stamp and Social Security benefits. Those facts were, and all times have been, the basis for Appellant's termination. There has been no divergence from that position. Appellant's failure to perform her job satisfactorily in processing the necessary applications and renewal for Food stamp and Social Security benefits has always been the basis for the termination.

Appellant's contention that the explanations provided during the unemployment hearing are inconsistent with either explanation is inaccurate. At the time of the unemployment hearing, there was reference to the Appellant's failure to maintain and keep current with the Food Stamp and Social Security benefits. The reference to "misconduct" is not a material change to the explanation for termination, but rather simply refers to the standard necessary to disqualify an

applicant for unemployment benefits. *See* Md. Code. Ann., Labor and Empl., §§ 8-1002 through 1003. Thus, the referenced "misconduct" is not a change in explanation but rather, the legal standard by which the unemployment decision was measured. Appellee asserted that Appellant's egregious performance constituted "misconduct" under the unemployment statute standard.

Certainly, it is not inconsistent that unsatisfactory job performance could rise to the level of misconduct for purposes of an unemployment hearing. Furthermore, the references to unopened mail in the employment hearing also constitute mere elaboration and clarification of the prior references to unsatisfactory job performance and incomplete paperwork. Failure to open the envelopes led Appellant to fail to process corresponding benefit applications and renewals, and thus the benefits lapsed. One merely elaborates on the other. Appellant is seeking to create an issue of pretext by asserting "inconsistent" explanations where none exist.

At all times relevant to this issue, Appellee's position has been that the Appellant was terminated for her failure to perform her job, namely, her egregious failure to maintain Food Stamp and Social Security benefits for Appellee's Residents. Whether those facts can be characterized as unsatisfactory job performance or misconduct is not a materially varying explanation, but rather, only a varying characterization of the same factual basis. There is no material variance

- 30 -

or difference in any explanation and thus, the cases relied upon by the Appellant are inapposite, and these facts do not suggest pretext. Consequently, Appellant has failed to generate the necessary issue of pretext to defeat the Appellee's motion for summary judgment, and thus, the District Court correctly granted the motion.

**3.**    **The District Court Correctly Disregarded Appellant's Request for Discovery, as Appellant Failed to Satisfy Rule 56(f)**

Appellant asserts that the District Court erred when it entered judgment in favor of Appellee before Appellant had the opportunity to conduct discovery. Appellant's Brief, at 54-55. In her Brief, Appellant contends that she has not had the opportunity to cross-examine Appellee's Human Resources Director or had the opportunity to conduct discovery to investigate her claim of the Appellee's discriminatory motive.[8]

Appellant generally asserts that, as a general rule, summary judgment is appropriate only after "adequate time for discovery," and cites *Evans v. Techns. Application and Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). A more thorough reading of *Evans* as well as its progeny, however, demonstrates that Appellant's argument is unavailing.

---

[8] Appellant's argument is partly based upon assertions that Motions to Dismiss should not be granted without discovery, and references to the adequacy of the Complaint. These arguments are unavailing and irrelevant, as the district court did not determine the Motion on a Rule 12(b)(6) Motion to Dismiss basis but rather, treated the Motion as a Motion for Summary Judgment.

Appellant has failed to comply with the prerequisites necessary to present an argument that the District Court erred by not permitting discovery. A nearly identical situation was addressed in *Thompson v. CDL Partners, LLC*, 378 Fed. Appx. 288 (4th Cir. 2010). In the *Thompson* case, this Court noted that although as a general rule, summary judgment is appropriate only after adequate time for discovery, a non-moving party cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery or move for a continuance to permit discovery before the Court ruled. *Id* at 293. The Court noted that its approach dovetails with Fed. R. Civ. P. 56(f), "which provides that a party opposing summary judgment may file an affidavit providing specific reasons that it cannot oppose a motion for summary judgment without the opportunity to conduct further discovery." *Id.* at 294. The Court noted that it places "great weight" on a Rule 56(f) affidavit and explained that "a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Id.* at 294 (citing *Evans*, 80 F.3d at 961). The *Thompson* Court noted expressly that in the *Evans* case, the Fourth Circuit cited approvingly a Second Circuit case holding that "the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity

for discovery was inadequate. *Evans*, 80 F.3d at 961 (quoting *Paddington Partners v. Bouchard*, 35 F.3d 1132, 1137 (2d Cir. 1994)).

There is no dispute that the Appellant did not file a Rule 56(f) affidavit in connection with her opposition to Appellee's motion for summary judgment. The Appellant did not present facts that demonstrate, under Affidavit, the specific need to conduct discovery in order to be able to effectively oppose the summary judgment motion. As this Court has held, a party who fails to file and present the requisite Rule 56(f) affidavit in opposition to a summary judgment motion, may not argue on appeal that the District Court erred by refusing to provide discovery. That is precisely what the Appellant seeks to do in this case. Appellant, however, has failed to satisfy the requirements of Rule 56(f), and the District Court properly disregarded the request for discovery.

## CONCLUSION

For the reasons identified and explained herein, Appellee, the ARC of Prince George's County, Inc., respectfully requests that the decision of the District Court be affirmed.

- 33 -

Respectfully submitted,


/s/ John S. Vander Woude
John S. Vander Woude
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
Telephone:  (410) 752-7474
Facsimile:  (410) 752-0611
E-Mail: vanderwoude@ewmd.com
*Attorneys for Appellee*
*ARC of Prince George's County, Inc.*

/s/ Eric M. Rigatuso
Eric M. Rigatuso
ECCLESTON & WOLF, P.C.
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
Telephone:  (410) 752-7474
Facsimile:  (410) 752-0611
E-Mail: rigatuso@ewmd.com
*Attorneys for Appellee*
*ARC of Prince George's County, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,933*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 29, 2013</u>          <u>/s/ John S. Vander Woude</u>
                                      *Counsel for Appellee*

                                      <u>/s/ Eric M. Rigatuso</u>
                                      *Counsel for Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of May, 2013, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Kevin M. Plessner
> LAW OFFICE OF KEVIN M. PLESSNER
> 228 Homewood Road
> Linthicum, Maryland  21090
> (443) 354-4775
>
> *Counsel for Appellant*

I further certify that on this 29th day of May, 2013, I caused the required copies of the Brief of Appellee to be hand filed with the Clerk of the Court.

/s/ John S. Vander Woude\
*Counsel for Appellee*

/s/ Eric M. Rigatuso\
*Counsel for Appellee*
